Hillsborough,
No. 5274.

EUGENE O'BRIEN *& a. v.* FRANCIS L. CURRAN *& a.*

Argued December 1, 1964.
Decided April 30, 1965.

*Victor W. Dahar* (by brief and orally), for the plaintiffs.

*Booth, Wadleigh, Langdell, Starr & Peters (Mr. Philip G. Peters* orally), for the defendant Quinn Freight Lines, Inc.

*Upton, Sanders & Upton (Mr. Richard F. Upton* orally), for the defendant Labor Union and its Secretary-Treasurer, Basil D. French.

PER CURIAM. The basic bone of contention in this case is whether the plaintiffs, although represented by the Union, can successfully attack the arbitration award because of the plaintiffs' absence from the arbitration proceeding where their interests are adverse to the position taken by the Union. The issue is not a frivolous one; the solution is not an easy one and the path to the absolutely correct answer is dimly lighted. In a recent article last month, Smith and Jones, The Supreme Court and Labor Dispute Arbitration: The Emerging Federal Law, 63 Mich. L. Rev. 751, 799 (1965), the problem is introduced as follows: "The question raised here is whether, because of the absence from the proceeding of an employee subject to the labor agreement whose interests are adverse to the position being taken by the union in support of the grievance, the arbitrator lacks jurisdiction to render a valid award. An illustrative example is presented by almost any seniority case where the union, in deciding to process a grievance filed by a particular employee asserting a right to preferential treatment because of his seniority, has made an internal decision that the grievant's rights are superior to those of another employee. Involved is the fundamental relationship of the union, as representative of all the employees in the bargaining unit, to the individual employee in the negotiation and administration of the labor agreement." See also, Summers, Collective Power and Individual Rights in the Collective Agreement — A Comparison of Swedish and American Law, 72 Yale L. J. 421 (1963).

Having stated the main issue, we summarize the factual background of the dispute. The Union has contracts with employers in the trucking industry including Quinn, and the Union, whose jurisdiction covers the state, is the recognized bargaining agent of all Quinn employees under the Labor Management Relations Act of 1947. 29 U.S.C.A., s. 159. In 1955 Quinn purchased Peterson's Motor Express, Inc. of Rochester, New Hampshire. The contract between Peterson and the Union was by its terms

binding on the "successors and assigns" of Peterson. Quinn recognized the original date of hiring by Peterson as the seniority dates of the former Peterson employees. In 1956 Quinn purchased Ames Motor Transportation, Inc. of Woodsville, N. H. under the same conditions. In 1957 a new contract was negotiated for the trucking industry in New Hampshire. It was signed by Quinn, the Union and other truckers and was binding on "successors and assigns." In 1959 Quinn purchased Roberts Express, Inc. of Manchester, New Hampshire, and recognized the seniority of these employees from the date of their employment with Roberts. In September 1960 Quinn purchased W. A. Stackpole Motor Transportation, Inc. of Manchester, N. H. The Stackpole employees were kept on a separate seniority list until December 1960 when the Stackpole terminal was closed by Quinn.

From January 1959 until March 29, 1961, Quinn followed substantially an integrated seniority list or "dovetail list" although some change was made in 1960. On such a list the employees of the former companies purchased by Quinn were listed in order of their original dates of employment with their former employers. On March 29, 1961 Quinn established a new seniority list which did away with the dovetailing system and established seniority on the date that Quinn purchased the companies. Accordingly Peterson's employees were at the top of the list, followed by employees of Roberts and Ames. The former Stackpole employees did not appear on the list. The Union objected, negotiations were unsuccessful and the Union filed a grievance with the Arbitration Board which held a hearing on August 31, 1961.

At the arbitration hearing French, as Secretary-Treasurer, argued in favor of an integrated seniority list on the ground that it was a contractual obligation of Quinn as "successor and assign" of each of the former employers. The attorney for Quinn argued against the Union's position and for a seniority list based on the date of the purchase of the companies. The attorney for the plaintiffs requested permission to intervene which was refused by the Arbitration Board in the absence of any written grievance as required by the contract between Quinn and the Union. No written grievance was filed with the Arbitration Board by the plaintiffs subsequent to the hearing of August 31. The Board's decision in favor of the Union requiring Quinn to maintain an integrated seniority list was made on November 28, 1961 and was clarified by a decision on December 29,

1961. Quinn appealed this decision to the Superior Court and in March 1962 the plaintiffs filed a petition to vacate the arbitration award.

In the summer of 1962 Quinn withdrew its appeal. The Union and Quinn in June 1962 agreed to accept the arbitration award and an integrated seniority list in accordance therewith was posted July 5, 1962. The plaintiffs sought an injunction against the enforcement of this seniority list which was denied by the Superior Court after hearing.

It was agreed by the parties that the remaining petition by the plaintiffs should be referred to a master whose report in 1963 approving the arbitration award was confirmed by the Superior Court. The plaintiffs' motion to set aside the master's report was denied March 10, 1964.

The plaintiffs attack the arbitration award and its confirmation by the master and the Court because they were not given notice of the hearing and were not allowed to intervene in the arbitration hearing. Reliance for this position is placed on *Clark* v. *Hein-Werner Corp.*, 8 Wis. 2d 264, 272, holding that "where the interests of two groups of employees are diametrically opposed to each other and the Union espouses the cause of one in the arbitration, it follows *as a matter of law* that there has been no fair representation of the other group." (Emphasis supplied). This view has been criticized, and represents a minority view which we do not follow. Koretz, Labor Law Decisions of the Supreme Court: 1963 Term, 16 Syracuse L. Rev. 1, 14 (1964); *Bailer* v. *Local No.* 470, 400 Pa. 188; Aaron, Some Aspects of the Union's Duty of Fair Representation, 22 Ohio St. L. J. 39, 49-54 (1961). The Union must make decisions and the determination of seniority cannot always be completely satisfactory to the same degree for all classes and groups of employees. "The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." *Ford Motor Co.* v. *Huffman*, 345 U. S. 330, 338. The authority of the bargaining agent is not absolute (*Steele* v. *L & N Railroad Company*, 323 U. S. 192, 198, 199) and it is subject to a fiduciary duty of fair representation. Cox, Rights Under a Labor Agreement, 69 Harv. L. Rev. 601, 638 (1956). But this does not

prevent the bargaining agent from choosing to seek an integrated seniority list even though the inevitable result may be harmful to some members of the Union. *Humphrey* v. *Moore*, 375 U. S. 335; Aaron, Reflections on the Legal Nature and enforceability of Seniority Rights, 75 Harv. L. Rev. 1532, 1536 (1962).

Although the plaintiffs failed to comply with the grievance procedure before the arbitration board in its attempt to intervene, we do not rest on that technical ground. See *Southwestern Trans. Co.* v. *Durham*, 102 N. H. 169; *Republic Steel Corporation* v. *Maddox*, 85 Sup. Ct. 614 (1965). A careful review of the evidence in this case, the history of the bargaining procedures of the Union and the employer over the last ten years, and the substantially consistent position taken by the Union in the support of an integrated seniority list support the Court's findings and rulings that the Union and its agents committed no fraud and acted in good faith. In these circumstances the refusal of the arbitration board to allow the plaintiffs to intervene did not invalidate its award and decision. If the allowance of intervention of the plaintiffs in this case would have been a wiser course, we cannot say that its denial was a fatal error. *Cf.* Note, Federal Protection of Individual Rights Under Labor Contracts, 73 Yale L. J. 1214 (1964); Summers, Individual Rights in Collective Agreements and Arbitration, 37 N. Y. U. L. Rev. 362 (1962).

It is not disputed that the plaintiffs have a right to review the arbitration decision and to question whether the Union has performed its fiduciary duty of fair representation. *Smith* v. *Evening News Ass'n*, 371 U. S. 195. However, their right to intervene was not guaranteed by RSA ch. 542 since they were not "parties" to the arbitration. RSA 542:8.

One of the grounds for appeal was that the award of the arbitration board was not signed by all three members as required by RSA 542:7. The decision of the arbitration board was unanimous and it was signed by the chairman only in accordance with the practice of the board in previous cases. The award was subsequently signed by the other members prior to the hearing before the master. In view of the unanimity of the arbitrators and their prior practice of having the award signed by the chairman, the actual recording of the signatures of the other two members was administrative and could be supplied at a

later date and did not affect the validity of the decision of the arbitration board. *Rogers* v. *Concord*, 104 N. H. 47, 50. See *Tuttle* v. *Tuttle*, 89 N. H. 219, 220.

The plaintiffs contend that they are entitled to a new arbitration before another board because the arbitrators were not impartial. The board was composed of one representative from the Union, one representative from the employer, and a third member appointed by the court. Human nature being what it is, absolute and complete impartiality will be more theoretical than real. One would not expect the Union representative to espouse the interests of the employer's representative or vice versa. The practical impartiality of the board results from the opposing forces of labor and management as filtered through the third and neutral member of the board who acted as chairman. The nature of collective bargaining and its administration through negotiation and arbitration is bound to absorb some impurities of partiality. Our Constitution has not demanded the impossible and it requires only that judges shall be "as impartial as the lot of humanity will admit." N. H. Const., Part I, *Art.* 35th. So too, arbitrators representing opposing factions will not be required to be any more impartial than "the lot of humanity will admit." There was no competent credible evidence to impeach the chairman of the arbitration board and the other members were not incompetent to serve by reason of the interests they represented. We conclude, as did the court below, that the arbitration board was a continuing one, properly constituted, and that it was guilty of no misconduct in its proceedings.

"It is difficult, if not impossible, to try in advance to tie square knots for all the bundles of rights and privileges of both labor and management that are collected in the collective bargaining package." *Southwestern Trans. Co.* v. *Durham*, 102 N. H. 169, 174. The management and operation of a seniority roster is very apt to be one of the problems in which all possible consequences cannot be anticipated. In this case we are convinced from the record and exhibits that the Union, the employer and the arbitration board acted in good faith and that their decisions were based on relevant considerations. *Humphrey* v. *Moore*, 375 U. S. 335. We also conclude that the action of the arbitration board was not tainted by mistake or misconduct. Whether, how and to what extent the rights of individual employees of an exclusive bargaining agent should have greater protection is a

matter of emerging Federal law on which the last chapter has not yet been written. Smith and Jones, The Supreme Court and Labor Dispute Arbitration: The Emerging Federal Law, 63 Mich. L. Rev. 751 (1965). In view of the result reached we find it unnecessary to examine other alternative and subordinate arguments of the parties.

*Plaintiffs' exceptions overruled;*
*judgment on the decree.*

DUNCAN, J., did not sit.