Public Employee Labor Relations Board
No. 7710
Strafford
No. 78-016

## ROCHESTER SCHOOL BOARD

v.

## PUBLIC EMPLOYEE LABOR RELATIONS BOARD

## N.H. PUBLIC EMPLOYEE LABOR RELATIONS BOARD

v.

## CITY OF ROCHESTER SCHOOL BOARD

## ROCHESTER EDUCATION ASSOCIATION, INTERVENOR

February 14, 1979

*Fisher, Parsons, Moran & Temple,* of Dover (*Robert E. Fisher* orally), for the Rochester School Board.

*Sheehan, Phinney, Bass & Green, P.A.,* of Manchester (*Bradford E. Cook* orally), for the New Hampshire Public Employee Labor Relations Board.

*McLane, Graf, Greene, Raulerson & Middleton, P.A.,* of Manchester (*Jack B. Middleton* orally), for the Rochester Education Association, Intervenor.

*Emmanuel Krasner,* of Farmington, by brief and orally, for the Rochester Federation of Teachers, Intervenor.

BROCK, J. These consolidated cases present several complex issues involving the Rochester School Board, the New Hampshire Public Employee Labor Relations Board, and two rival unions acting on behalf of teachers in the Rochester school system. At the center of the disputes now before this court are some sixty teachers who were compensated at salary levels lower than those required by their collective bargaining agreement for the 1975–76 school year.

In our decision in *Rochester Education Association v. City of Rochester,* 116 N.H. 402, 359 A.2d 640 (1976), this court upheld the validity of a Master Agreement between the Rochester Education Association (REA), representing teachers in the Rochester school system, and the city of Rochester, covering the 1974–75 and 1975–76 school years. During the winter of 1976, while that case was pending here, the REA filed with the New Hampshire Public Employee Labor Relations Board several unfair labor practices charges pursuant to RSA 273-A:5 that concerned compliance with the Master Agreement. The appeals now before this court are an appeal by the city of Rochester from the PELRB's ruling on two of the unfair labor practices charges, and the city's exceptions to an order of Strafford County Superior Court (*King,*

J.) enforcing the PELRB's orders. We uphold the PELRB and the court below.

The Rochester Education Association (REA), affiliated with the New Hampshire Education Association, was certified as the exclusive representative of Rochester teachers under the "grandfather clause", Laws 1975, 490:3 (eff. Dec. 21, 1975). On January 26, 1976, the REA filed with the newly-constituted New Hampshire Public Employee Labor Relations Board (PELRB) a list of unfair labor practices that it alleged had been committed by the Rochester School Board in violation of the statute and of the Master Agreement that was then in effect. These charges included the following:

> Refusing to implement and honor a valid contract, including inconsistent application of the salary schedule. (The salary schedule has been implemented for some teachers and not for others).

> Refusing to complete negotiations for the 1975–76 year in accordance with the contractual provisions.

The PELRB scheduled a hearing on these charges for February 12, 1976, which was rescheduled to February 19, 1976, at the insistence of the school board. At the hearing the PELRB heard testimony presented by the REA and received in evidence documents relating to the contract and the charges. The PELRB, having been led to believe that the parties could work out a settlement, and desiring to avoid direct involvement in the merits of the salary question, ordered the REA and the school board to try to negotiate a solution themselves.

Negotiations proved unsuccessful and in fact impossible. Throughout 1976, the PELRB made repeated attempts to have the REA's charges submitted to a federal mediator and to have the parties negotiate. During this period the school board refused to participate in these efforts, on various grounds. In December 1976 the REA, on behalf of all teachers in the Rochester School District, filed a bill in equity in Strafford County Superior Court, seeking temporary and permanent injunctive relief in the form of an order to the school board to pay "all sums due and owing" under the Master Agreement salary schedule for the 1975-76 school year. The Trial Court (*Mullavey*, J.) denied the REA's request for temporary relief, pending a hearing on the merits. On April 13, 1977, the trial court deferred a hearing on the merits pending the outcome of the PELRB proceedings on the same back pay issue.

On February 8, 1977, the PELRB issued its decision on the pending charges, finding that the school board had committed unfair labor practices under the statute, and ordering it to bargain in good faith with the employees' representatives and to pay the salary differentials that had been withheld from employees during 1975–76.

On February 10, 1977, counsel for the Rochester School Board wrote to the chairman of the PELRB challenging the February 8 order. He asserted that no hearing had ever been held before the PELRB on the wages charge; that the PELRB's conduct was "unbelievable and ludicrous;" and that the PELRB's findings were contrary to the facts found by Judge Mullavey in the equity case pending in Strafford County Superior Court. He requested that a rehearing be held, and at the same time requested "that the board disqualify itself from having any further consideration of this case." The PELRB received that letter on Friday, February 11, 1977. At its next meeting, on Friday, February 18, 1977, the PELRB considered the school board's request for a rehearing and decided to grant the request. The rehearing was scheduled for March 11, 1977. (Ex. 52.) Due to staffing problems at the PELRB, notice to the parties of this hearing was delayed until Wednesday, February 23, 1977.

On February 24, 1977, presumably before he received notice that the motion for rehearing had been granted, counsel for the school board filed a petition with this court, challenging the PELRB's authority to issue its February 8 order, and asking that the order be "rescinded," that the PELRB be "ordered to refrain from taking any further action whatsoever in relation to the plaintiff or the school teachers of the City of Rochester," and that the plaintiff, the Rochester School Board, be awarded $25,000, damages, plus costs. Although the petition was framed as an original writ, we deem it an appeal brought pursuant to RSA ch. 541. As soon as it received notice of that filing, the PELRB moved to dismiss the petition on the grounds that it was premature because a rehearing had been scheduled. The rehearing was held as scheduled, on March 11, 1977. Counsel for the school board did not attend, resting on his assertion that "it would be improper for you to conduct any further hearings in relation to this matter prior to the outcome of the litigation which is presently pending."

## I. *Appeal from PELRB Orders*

The school board's first petition to this court, filed February 24, 1977, is procedurally irregular. The statutes governing appeals from decisions of the PELRB provide a specific appeal procedure. In partic-

ular, the statute provides that "No appeal from any order or decision of the commission shall be taken unless the appellant shall have made application for rehearing as herein provided." RSA 541:4. An appeal is proper only after the request for rehearing has been denied, or after the decision on rehearing has issued. RSA 541:6. The statutory procedure is exclusive, absent extraordinary circumstances that were not present in this case. RSA 541:22; *Nashua v. Public Util. Comm'n*, 101 N.H. 503, 507, 148 A.2d 277, 280 (1959).

 The school board argues that because it had not received notice of the PELRB's decision to grant a rehearing within ten days of the time it requested the hearing, it was entitled to act as if the request had been denied. We disagree. The PELRB met the statutory requirement that it either grant or deny the request within ten days. RSA 541:5. If the school board had in good faith wanted to know the disposition of its request, it could easily have asked. "The mere fact that the appellant was misled into believing the pertinent act or fact constituting a basis for appealability to exist does not avoid the effect of premature appeal when he could have ascertained the truth upon proper inquiry." 4A C.J.S. *Appeal & Error* § 461 at 153 (1957). The school board's assertion in its petition here that it had no other adequate remedy is inconsistent with its own action in requesting a rehearing before the PELRB. *See State v. Coan*, 91 N.H. 489, 491, 23 A.2d 369, 370 (1941). Under these circumstances, the petition was premature and could properly be dismissed.

 After the March 11 hearing before the PELRB, which it failed to attend, the school board attempted to amend its petition in this court to state that it was aggrieved by the PELRB's order on rehearing. No grounds were stated for its objections at that time, as required by law. RSA 541:7. By failing to appear at the rehearing, which was held for the express purpose of allowing the school board to present its arguments and evidence, the school board failed to exhaust its administrative remedies provided by statute and has no standing to appeal the resulting order. *V.S.H. Realty v. City of Rochester*, 118 N.H. 778, 394 A.2d 317 (1978).

For the reasons stated above, the petition filed by the school board on February 24, 1977, in this court could be dismissed with prejudice.

In order to prevent further waste of both judicial and administrative resources, and recognizing the school board's seemingly boundless use of dilatory tactics, we nevertheless elect to proceed to a consideration of the merits of the PELRB's orders of February 8, 1977 and March 14, 1977.

■ The first portion of the PELRB's February 8 order found that the school board had refused to bargain in good faith with the employees' certified representative, and ordered the school board to enter into negotiations. The PELRB's finding came after more than one year of unsuccessful attempts at negotiations and mediation, and is fully supported by the record. The order merely reaffirms the duty to bargain provided for by statute.

The duty of a public employer and the certified public employee organization to bargain with one another in good faith is at the core of the collective bargaining process. RSA 273-A:3 I. Shortly after it enacted this statute, the legislature in enunciating its policy reasons for having done so stated that:

> Requiring public employers to negotiate in good faith and to reduce to writing any agreements reached with employee organizations which have been certified as representing their public employees; . . . .

Laws 1975, ch. 490:1 II. The PELRB has, since the effective date of the statute, issued no less than six orders to the school board ordering it to bargain with the representative of its teacher employees. It has found on three separate occasions that the school board was in violation of the express provisions of the statute by refusing to bargain.

The school board's principal rationale for its refusal to bargain has been its contention that it never has an obligation to bargain so long as any litigation involving any teachers or any collective bargain contract is pending in any forum, including both the superior court and this court. Counsel for the school board has vigorously asserted on numerous occasions that the school board will not comply with the order and that "[it]" will not negotiate under the gun, and [it] will not negotiate while being sued and having litigation in the process." No authority has ever been presented to support that position, however. Lest there be any question about that argument in the future, we hold that no such exception exists to the statutory duty to comply with the order of the PELRB to bargain in good faith.

■■ The duty to bargain was not suspended or stayed by any pending litigation; a PELRB order can only be suspended by the PELRB itself, on terms and conditions prescribed by it, or by this court upon a proper request pending appeal, if justice so requires. *State Employees Ass'n v. Board of Trustees, N.H. State Prison*, 118 N.H. 466, 468, 388 A.2d 203, 205 (1978); RSA 541:5, :18. This court's authority to issue such a stay "is exercised with caution and forbear-

ance and only when the necessity to act is clear." *American Fed'n of State, County and Municipal Employees Local 572 v. City of Dover*, 115 N.H. 491, 492, 345 A.2d 912 (1975). The orders of the PELRB ordering the school board to negotiate, including its attempts to bring in a federal mediator, have been entirely proper and in fact have been mandated by the school board's inexcusable behavior throughout these proceedings.

The second substantive portion of the PELRB's order concerns the school board's liability for salary increments for the 1975–76 school year. In its order of February 8, 1977, the PELRB specifically found that

> the School Board has failed to comply with the terms of the contract to which it agreed, to sign said contract, to pay wages and benefits under said contract, all of which actions comprise unfair labor practices under the terms of RSA 273-A:5 I(h).

The PELRB ordered that

> in all instances in which the School Board failed to comply with the provisions of the contract as to wages and benefits, that it pay such wages and benefits in compliance with said contract to the extent not previously paid.

The school board's contention that the issue of 1975–76 salary levels was never properly brought before the PELRB is wholly without foundation. The issue was included as one of the REA's unfair labor practices charges filed with the PELRB in January 1976. It was considered at some length at the PELRB hearing held on February 19, 1976, at which counsel for the school board was present and conducted a full cross-examination of the REA's witnesses. The REA presented testimony and documentary evidence that adequately support the PELRB's finding.

The school board further contends, citing this court's decision in *State Employees Association v. Mills*, 115 N.H. 473, 344 A.2d 6 (1975), that the PELRB has no jurisdiction to consider any issue concerning wages or financial matters. We disagree. The PELRB does not have the authority to order that a particular salary figure be included in a collective bargaining contract. RSA 273-A:13 II(b). Once a contract is negotiated and executed, however, the cost items included in it are binding on the public employer, and are generally not subject to impairment by subsequent legislative action. *See Blood v. Manches-*

*ter Electric Light Co.*, 68 N.H. 340, 39 A. 335 (1895). The contract at issue here has already been adjudicated valid and binding through the end of the 1976 school year. *Rochester Education Ass'n v. City of Rochester*, 116 N.H. 402, 405, 359 A.2d 640, 642 (1976). The PELRB's role was limited to reading and interpreting the contract as a necessary part of determining whether the school board had breached that agreement. RSA 273-A:5 I(h). It was within the PELRB's authority to find, in effect, that the school board's attempt unilaterally to alter the rates of compensation established by the Master Agreement constituted an unfair labor practice. *See State Employees' Ass'n v. Board of Trustees, N.H. State Prison*, 118 N.H 466, 467–68, 388 A.2d 203, 204 (1978).

The PELRB's substantive ruling on the salary question is adequately supported by the record. The Master Agreement for 1974–76 which this court declared valid in *Rochester Education Association v. City of Rochester*, 116 N.H. 402, 359 A.2d 640 (1976), included a salary schedule, but also stated that "The articles dealing with financial issues may be changed during the 1974–75 school year's negotiations process for the contractual year 1975–76." The REA's position is that unless a new agreement was negotiated, the salary schedule in the Master Agreement remained in effect and each teacher would automatically move up one step to his or her proper place on that schedule. The school board, on the other hand, contends that under the renegotiation provision, if no new agreement was reached, the school board was entitled unilaterally to determine the salary levels for the 1975–76 school year. In fact, the school board asserted repeatedly that "time is on [our] side," and that once the 1975–76 school year was over the issue of whether teachers employed during that year had been paid in accordance with the Master Agreement would be moot. That position is erroneous; the question whether the employees are entitled to the salaries established by the contract remains alive and justiciable. *Powell v. McCormack*, 395 U.S. 486 (1969).

The record is clear that no new salary agreement was reached for the 1975–76 school year, and in fact that from April 25, 1975, through July 1976, the school board refused to enter into any negotiations whatsoever with the REA. Under these circumstances the PELRB was justified in concluding that for the 1975–76 school year the salary schedule included in the Master Agreement remained in effect, and in ordering the school board to pay each teacher the salary to which he or she was entitled under that schedule. The PELRB's order is therefore affirmed in full.

## II. *Case Reserved from Superior Court.*

On March 14, 1977, the PELRB issued a second order which goes beyond the February 8 order only in that it ordered both the school board and REA to produce specific salary information for 1975–76, from which the PELRB could determine which teachers were entitled to back pay and the amount owing to each one under the Master Agreement. That order is the equivalent of a "back-pay specification" issued by the NLRB in analogous cases. *See* 29 C.F.R. § 102.52 (1977). The REA complied with the request within 30 days; the school board did not, and has not complied to the present time.

The PELRB then filed a petition in Strafford County Superior Court pursuant to RSA 273-A:7 for enforcement of its March 14 order. The petition was granted by that Court (*King,* J.) on November 7, 1977, "insofar as the petitionee [the school board] is ordered to produce information" as specified in the PELRB's March 14 order. The school board's exceptions to that order were reserved and transferred to this court, as a new case (78-016), which was consolidated with its earlier petition.

 By statute the superior court is required to issue an enforcement order

> upon satisfying itself that: I. The order of the board was within its jurisdiction to issue; and II. There is substantial evidence on the record considered as a whole to support the finding of the board. RSA 273-A:7.

As we have noted above, the PELRB's orders were within its jurisdiction and were supported by substantial evidence in the record. Furthermore, the records sought by the PELRB are ones which any citizen has a right to examine. RSA 91-A:4; *Mans v. Lebanon School Bd.,* 112 N.H. 160, 290 A.2d 866 (1972). The trial court's order is therefore affirmed and we note that it has ample powers at its disposal to enforce its order. *See Nottingham v. Cedar Waters, Inc.,* 118 N.H. 282, 385 A.2d 851 (1978).

## III. *Appeal by Rochester Federation of Teachers.*

There is also before us what amounts to a separate appeal by the Rochester Federation of Teachers (RFT), from an interim order of the PELRB dated November 28, 1977. While the REA's unfair labor practices were pending, the school board asked the PELRB to sponsor a representative election to determine if the REA still had the support

of the bargaining unit. Upon petition for election filed by the Rochester Federation of Teachers (RFT), a rival union affiliated with the American Federation of Teachers, AFL–CIO, the PELRB ordered an election that was held on January 13, 1977. The results of that election were 141 votes for RFT, 73 votes for REA, and 2 votes for "no representative." On January 26, 1977, prior to ruling on the pending charges, the PELRB certified the RFT as the new bargaining agent for the teachers in the Rochester school system. As the current representative, the RFT is an interested party with standing to intervene. RSA 541:8.

The RFT filed a motion with the PELRB in July 1977 asking that the PELRB dismiss the unfair labor practices charges filed by the REA, and rescind the PELRB's resulting order of February 8, 1977. The RFT's position is that the PELRB has no jurisdiction over persons who are no longer employed by the Rochester school system; that the REA, now decertified, cannot appear before the PELRB on behalf of those former employees; and that the RFT, as the exclusive collective bargaining agent, has the authority to compromise all outstanding unfair labor practices charges in order to foster a more harmonious relationship with the school board. After a full hearing, the PELRB ruled on November 28, 1977, that the REA could continue to represent all teachers who had left the Rochester school system prior to the date of the representative election, January 13, 1977, and that the RFT would be the sole representative of persons who remained employed after that date. The RFT appealed from that ruling by intervening in the appeals already pending in this court.

The RFT argues first that the PELRB no longer has jurisdiction to consider claims of persons who are no longer "public employees." RSA 273-A:1 IX.

The substantive back-pay claims of these former employees are in the nature of vested rights. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 548 (1964). The only question is which forum, the PELRB or superior court, is the proper one for vindication of those rights.

The PELRB has "primary jurisdiction of all violations of RSA 273-A:5," that is of unfair labor practices complaints. RSA 273-A:6 I. The REA's claim that the school board was, as of February 1976, refusing to pay its employees according to the salary schedule set forth in their contract was such an unfair labor practices complaint. RSA 273-A:5 I(h). The school board's contention that the superior court is the only forum where this issue can be litigated is simply wrong. We note that the school board itself urged that the REA's equity suit in Strafford County Superior Court to recover these same back wages should be

dismissed because the relief requested was "otherwise obtainable" in the PELRB proceedings.

The RFT's argument is based on the legislative statement that the purpose of the PELRB was "to assist in resolving disputes between government and its employees." Laws 1975, 490:1 III. It contends that a dispute involving a former employee is a private matter outside the PELRB's jurisdiction. While some claims of former employees may not be within the jurisdiction of the PELRB, the back pay claims at issue here are properly before it. At the time the unfair labor practices charge was filed, all the persons who were complaining about salary inequities were public employees of the Rochester school system. Because of delays caused in part by the parties and in part by the PELRB's desire that the parties themselves negotiate a solution to the impasse, no formal decision was made until the next academic year, by which time some of the affected teachers had left the system.

■ The Supreme Court of the United States has held that a discharged employee seeking severance pay under a collective bargaining agreement "must afford the union the opportunity to act on his behalf" through the contract grievance procedure before he is entitled to direct legal redress in the form of a breach of contract action in the state courts. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653 (1965). The reasoning of *Republic Steel* applies as well to charges filed with the PELRB. On the facts presented here, the PELRB had jurisdiction to adjudicate claims involving former public employees which arose during the period covered by the collective bargaining agreement.

The RFT also argues that the REA no longer has standing to represent anyone in proceedings before the PELRB because it is no longer the certified bargaining agent for any Rochester teachers. The RFT contends in essence that a representative election in which the complaining union is decertified moots or bars all unfair labor practices charges brought by it and pending at the time of the election.

■ It appears to be the practice of the National Labor Relations Board to dismiss petitions for elections pending determination of outstanding unfair labor practices charges, unless the party that brought those charges agrees to waive them. 18B T. KHEEL, BUSINESS ORGANIZATIONS: LABOR LAW § 13.03[3] (1978). In this case the REA did not waive, and in fact specifically objected to the holding of a representative election because of outstanding unfair labor practices charges and the school board's ongoing refusals to bargain with the REA. The PELRB chose nevertheless to hold the election saying that "The Board intends to proceed with the election on the 13th and we'll deal with the

other matters in due course." Under these circumstances, it was not erroneous for the PELRB to decide that the unfair labor practices charges pending at the time of the election survived the election.

Our holding is also consistent with federal cases holding that when a union is the duly certified representative of a group of employees, "the subsequent expiration of the Agreement, and decertification, do not affect the Union's standing to prosecute claims that arose when the collective bargaining agreement was in effect." *Local 368, United Fed'n of Engineers v. Western Elec. Co.*, 359 F. Supp. 651, 654 (D.N.J. 1973). "The employees need a champion having an ardent interest and ample resources. Since the union has presumably obtained the disputed 'right' in the first instance by getting it into the contract, there does not seem to be any reason why it should not be the champion of that right when the controversy becomes alive." *United States Gypsum Co. v. United Steelworkers*, 384 F.2d 38, 46 (5th Cir.), *cert. denied*, 389 U.S. 1042 (1967).

The RFT concedes that it has no authority to represent or appear on behalf of teachers who left the Rochester school system before the RFT was certified, who are not now part of the bargaining unit. RSA 273-A:1 IV; *Allied Chemical & Alkali Workers, Local 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157 (1971). The RFT's interest in this case is, in fact, adverse to that of the former employees; the RFT, in order to further its own negotiating position on behalf of its members, has repeatedly tried to dismiss or compromise the back pay claims at issue here. If the REA is disqualified from appearing before the PELRB for the limited purpose of bringing the back pay issue to a final resolution, the injured employees will be denied the effective advocate to which they are entitled.

Were we to decide that the PELRB loses jurisdiction over complaints, either when an employee leaves public employment or when an employee organization is decertified, the injured persons would be forced to relitigate the same issues in superior court. Such a procedure would entail duplicated fact-finding and a risk of inconsistent results, would unjustly benefit a party who had utilized dilatory tactics in the PELRB proceedings, and would significantly interfere with the PELRB's primary jurisdiction over labor disputes. *See* RSA 273-A:6. There may be cases in which facts constituting an unfair labor practice under RSA 273-A:5 also give rise to an action in contract that would fall within the jurisdiction of the superior courts. *Beausoleil v. United Furniture Workers Local 136-B*, 107 N.H. 437, 440, 224 A.2d 585, 587 (1966).

We have previously stated that in appropriate cases we will order "the shifting of counsel fees to a . . . party who has acted in bad faith to prolong the litigation." *Harkeem v. Adams*, 117 N.H. 687, 691, 377 A.2d 617, 619 (1977). This is such a case. Attorney's fees are hereby authorized in favor of both the REA and the PELRB, to be assessed against the Rochester School Board. In addition, the court on its own motion hereby awards against the Rochester School Board double the costs, exclusive of attorneys' fees, incurred by the REA and the PELRB in this appeal from February 24, 1977, the date of filing, to the date of this decision. RSA 490:14-a (Supp. 1977).

*Appeals dismissed; remanded.*

All concurred.