Public Employee Labor Relations Board
No. 2011-646

APPEAL OF ERIC JOHNSON
(New Hampshire Public Employee Labor Relations Board)

Argued: September 20, 2012
Opinion Issued: February 25, 2013

*Backus, Meyer & Branch, LLP*, of Manchester (*Jon Meyer* on the brief and orally), for the petitioner.

*Molan, Milner & Krupski, PLLC*, of Concord (*John S. Krupski* on the brief and orally), for the respondent.

BASSETT, J. The petitioner, Eric Johnson, appeals a decision of the New Hampshire Public Employee Labor Relations Board (PELRB) finding the evidence insufficient to support his claim that the respondent, the New Hampshire Troopers Association (Union), breached its duty of fair representation. We affirm.

The parties either stipulated to, or the PELRB found, the following facts. The petitioner became a New Hampshire State Trooper in 1994 and retired in July 2007. In 2004, the Union filed an unfair labor practice charge alleging that the State had unlawfully deducted annual and sick leave from the troopers' leave accounts. The PELRB ruled in favor of the Union and ordered the State to "restore accumulated annual . . . and sick leave to [affected bargaining unit] members." We affirmed the PELRB's decision. *See Appeal of N.H. Dep't of Safety*, 155 N.H. 201 (2007). Immediately thereafter, the Union demanded that the State restore leave for all troopers, including retired troopers.

The negotiations over restoring leave to the troopers lasted for more than a year, during which time the petitioner retired. From the beginning of the negotiations, the State opposed restoring leave to non-active troopers. Additionally, the Union was advised by its attorney that it "did not represent retired or other non-active troopers because upon leaving their employment they were no longer members of the bargaining unit." *See Chemical Workers v. Pittsburgh Glass*, 404 U.S. 157, 181 n.20 (1971). Eventually, on July 16, 2008, the Union and the State entered into a settlement agreement that did not provide compensation for troopers who had retired or resigned before the settlement date.

In 2010, the petitioner filed an unfair labor practice charge alleging that the Union had breached its duty of fair representation when it agreed to a settlement that did not provide compensation to retired troopers. The petitioner alleged that, by so doing, the Union acted arbitrarily and in bad faith. The Union did not dispute that it owed the petitioner a duty of fair representation even though he was retired, but denied that it breached its duty.

The PELRB determined that the petitioner had failed to prove that the Union acted in bad faith. Specifically, the PELRB found that there was no evidence "proving animosity or discriminatory intent on the part of the Union . . . with respect to [the petitioner] or other retired or resigned troopers."

The PELRB also found that the petitioner failed to prove that the Union acted arbitrarily. Relying upon *O'Brien v. Curran*, 106 N.H. 252, 256-57 (1965), the PELRB stated that "[t]he duty of fair representation does not prevent a union from choosing to seek a particular outcome even though the inevitable result may be harmful to some members of the bargaining unit." Examining the totality of the circumstances, the PELRB decided that "the Union's decision to enter into a Settlement Agreement, which did not provide compensation for retired troopers but was otherwise beneficial to the rest of the bargaining unit members, was [not] . . . so far outside a wide range of reasonableness as to be irrational." (Quotation omitted.) *See Air Line Pilots v. O'Neill*, 499 U.S. 65, 67 (1991). The petitioner unsuccessfully moved for rehearing, and this appeal followed. On appeal, the petitioner challenges only the PELRB's finding that he failed to prove that the Union acted arbitrarily.

"When reviewing a decision of the PELRB, we defer to its findings of fact, and, absent an erroneous ruling of law, we will not set aside its decision unless the appealing party demonstrates by a clear preponderance of the evidence that the order is unjust or unreasonable." *Appeal of Laconia Sch. Dist.*, 150 N.H. 495, 496 (2004); *see* RSA 541:13 (2007).

■ ■ "[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Marquez v. Screen Actors*, 525 U.S. 33, 44 (1998); *see O'Brien*, 106 N.H. at 256-57 (relying upon federal law when discussing breach of duty of fair representation); *cf. University System v. State*, 117 N.H. 96, 99 (1977) (suggesting that newly created PELRB look to decisions of the National Labor Relations Board (NLRB) for guidance). "[U]nder the arbitrary prong, a union's actions breach the duty of fair representation only if the union's conduct can be fairly characterized as so far outside a wide range of reasonableness that it is wholly irrational or arbitrary." *Marquez*, 525 U.S. at 45 (quotations omitted). "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Id.* at 45-46. "A union's conduct can be classified as arbitrary only when it is irrational," meaning that "it is without a rational basis or explanation." *Id.* at 46.

■ On judicial review of a union's performance, a court may not substitute its own view of the merits of a bargain for that of the union. *Air Line Pilots*, 499 U.S. at 78. "Any substantive examination of a union's performance, therefore, must be highly deferential, recognizing the wide latitude that negotiators need for effective performance of their bargaining responsibilities." *Id.* In the instant case, in order to prevail, the petitioner must show that the Union's decision to negotiate a settlement agreement that did not provide a remedy for retired troopers was "without a rational basis or explanation." *Marquez*, 525 U.S. at 46.

■ The petitioner first argues that the mere fact that retired troopers had no remedy under the settlement agreement establishes, as a matter of law, that the Union breached its duty of fair representation. We disagree. As the Supreme Court has noted:

> Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

*Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953); *see O'Brien*, 106 N.H. at 256. "As a practical matter, unions are rarely able to negotiate agreements that completely satisfy the desires of all its represented members." *Bowerman v. UAW Local 12*, 646 F.3d 360, 369 (6th Cir.), *cert.*

*denied*, 132 S. Ct. 766 (2011). "Moreover, there is no requirement that unions treat their members identically as long as their actions are related to legitimate union objectives." *Vaughan v. Air Line Pilots Ass'n, Intern.*, 604 F.3d 703, 712 (2d Cir. 2010). A union has the discretion to "balance the rights of individual employees against the collective good, or it may subordinate the interests of one group of employees to those of another group, if its conduct is based upon permissible considerations." *Postal Workers (Postal Service)*, 345 N.L.R.B. 1282, 1285 (2005). "If a union resolves conflicts between employees or groups of employees in a rational, honest, and nonarbitrary manner, its conduct may be lawful . . . , even if some employees are adversely affected by its decision." *Id.*

█ Thus, in *Postal Workers (Postal Service)*, the NLRB ruled that the union's decision to exclude the estates of deceased employees from sharing the settlement proceeds was reasonable, practicable, and did not breach the duty of fair representation. *Id.* at 1284-85. The NLRB similarly decided in *Letter Carriers (Postal Service)*, 347 N.L.R.B. 289, 289-90 (2006), that the union did not breach the duty of fair representation when it allocated more settlement proceeds to active employees than it did to retired employees. In *Steelworkers Local Union No. 2869*, 239 N.L.R.B. 982, 982-83 (1978), the NLRB explained that a union's decision to limit distribution of settlement proceeds to those employees in the bargaining unit at the time of settlement "simply constituted one of a series of reasonable, practical administrative determinations regarding those employees entitled to share in the settlement proceeds."

██ Accordingly, in this case, merely because the Union agreed to a settlement that excluded retired troopers from a remedy does not establish, as a matter of law, that the Union breached its duty of fair representation. This is particularly so given the "ambiguous nature of the legal landscape on the issue of whether unions owe any duty of fair representation to retirees." *Letter Carriers (Postal Service)*, 347 N.L.R.B. at 289. We have not yet decided whether a union owes a duty of fair representation to retirees under the New Hampshire Public Employee Labor Relations Act (PELRA). The PELRA pertains to "public employees," RSA 273-A:1, IX (2010), and we have not yet determined whether the statutory definition of "public employees" includes retirees.

█ Although the petitioner posits, and the Union appears to agree, that we decided the issue in *Rochester School Board v. New Hampshire PELRB*, 119 N.H. 45 (1979), he is mistaken. In that case, we held only that the PELRB had jurisdiction to adjudicate the back-pay claims of former employees. *Rochester School Bd.*, 119 N.H. at 55-57. While we may have

implied that the retired employees in that case constituted "public employees" under the PELRA, we did not so hold. Indeed, we specifically acknowledged that "some claims of former employees may not be within the jurisdiction of the PELRB." *Id.* at 56. In *Rochester School Board*, we did not hold that, or even address whether, the duty of fair representation extends to retired employees. Thus, this is an open question under our state law.

 Under federal law, it appears well-established that, generally, a union does not owe a duty of fair representation to retired employees. In *Pittsburgh Glass*, 404 U.S. at 165-76, the United States Supreme Court held that a retired worker is not an "employee" within the meaning of the National Labor Relations Act for purposes of establishing the scope of an employer's duty to bargain collectively. In a footnote, the court stated: "Since retirees are not members of the bargaining unit, the bargaining agent is under no statutory duty to represent them in negotiations with employers." *Id.* at 181 n.20. Subsequently, in *UMWA Health & Retirement Funds v. Robinson*, 455 U.S. 562, 574-75 (1982), the Court reiterated its view that "former union members . . . may suffer from discrimination in collective bargaining agreements because the union need not affirmatively represent them or take into account their interests in making bona fide economic decisions on behalf of those whom it does represent." (Quotation, brackets, and ellipses omitted.)

 Federal courts have relied upon *Pittsburg Glass* and *Robinson* to hold that a union owes no duty of fair representation to retirees. *See Anderson v. Alpha Portland Industries, Inc.*, 727 F.2d 177, 181-82 (8th Cir. 1984); *Merk v. Jewell Food Store Div., Jewell Companies*, 641 F. Supp. 1024, 1027-32 (N.D. Ill.), *aff'd on other grounds*, 848 F.2d 761 (7th Cir. 1986). In *Anderson*, the court observed that imposing a duty on unions to represent both active and retired employees "would create the potential for severe internal conflicts that would impair the bargaining unit's ability to function" because of the divergence of interests between the two groups. *Anderson*, 727 F.2d at 183 (quotation omitted). The court also noted that any actual conflicts of interests would unavoidably be resolved in favor of the active employees because retirees are not eligible to vote in union elections and therefore the union leadership could have "no political interest in serving the interests of retirees." *Id.*

The district court in *Merk*, like the Eighth Circuit Court of Appeals in *Anderson*, concluded that former employees were no longer bargaining unit members and, therefore, the union owed them no duty of fair representation. *Merk*, 641 F. Supp. at 1030. The court reasoned that if the union owed the former employees a duty of fair representation, it "would be

forced to deal with an intolerable conflict of interest," which would ultimately operate to their detriment, because, being unable to participate in union elections, they would have "no control over their representatives." *Id.* at 1028 (emphasis omitted).

We find *Merk* instructive because it is factually similar to the instant case. In *Merk*, the union and the employer had a dispute regarding the employer's reduction of employee wages and benefits. *Id.* at 1026. The union and employer eventually settled the dispute with the employer agreeing to restore "most of the wages and benefits to their previous level," but only for employees who were then on the payroll. *Id.* The employer in *Merk*, like the State in this case, insisted that the settlement exclude former employees. *Id.* at 1032. The union in *Merk*, like the Union here, "reluctantly abandoned [the former employees] at [the employer's] insistence." *Id.* As a result, a class of as many as 2,000 former employees filed an action, alleging that the union had breached its duty of fair representation. *Id.* at 1026-27.

In deciding that the union did not owe a duty of fair representation to the former employees, the *Merk* court observed that there was a real conflict of interest between the active and former employees. *Id.* at 1029. Once they left employment, the court noted, the former employees "had *one* narrow interest — recovering lost wages," while active employees had a much broader range of interests, including obtaining good future wages and working conditions, as well as securing future peace and stability. "The current employees had everything to gain and nothing to lose by cutting [the former employees] loose without a remedy." *Id.* at 1029-30. In leaving the former employees out of the settlement, the current employees "gave up nothing of economic value to themselves, but gave [the employer] an economic plum." *Id.* at 1030. The court stated: "Because [the employer] apparently took a hard line as to [the former employees], the current employees could not have helped [the former employees] without hurting their own position. This is a classic case of conflict of interest." *Id.*

 Similarly, here, the Union reasonably could have decided that given the State's insistence upon excluding retired troopers from the settlement agreement, there was "an intolerable conflict of interest" between the interests of active and retired State Troopers. *Id.* at 1028. Under these circumstances, and "in light of the ambiguous nature of the legal landscape" regarding whether unions even owe a duty of fair representation to retirees, *Letter Carriers (Postal Service)*, 347 N.L.R.B. at 289, we cannot say that, by entering into the settlement agreement, the Union acted "so far outside a wide range of reasonableness" as to be "wholly irrational or arbitrary." *Marquez*, 525 U.S. at 45 (quotations omitted).

In arguing to the contrary, the petitioner likens this case to *Baker v. Board of Education, Hoosick Falls*, 770 N.Y.S.2d 782, 786 (App. Div. 2004). In *Baker*, the union and employer had negotiated a collective bargaining agreement that included a new salary schedule reflecting retroactive salary increases. *Baker*, 770 N.Y.S.2d at 784. The union and employer had also negotiated a separate agreement under which the retroactive salary increases would be paid only to active employees. *Id.*

Thereafter, eleven retired employees sued the union for breaching its duty of fair representation by failing to represent them in the negotiations. *Id.* The union unsuccessfully moved to dismiss the claim and then appealed. *Id.* at 784-85. In determining whether the union had a duty to represent the retired employees, the court first observed that, generally, "a union does not have a duty to represent its former members in contract negotiations because, among other things, retirees typically do not have the same interests as active employees." *Id.* at 785; *see Pittsburgh Glass*, 404 U.S. at 171-73. Nevertheless, the court decided that the retired and active employees shared a mutuality of interests with regard to the retroactive salary increases. *Baker*, 770 N.Y.S.2d at 785. The court also ruled that the plaintiffs sufficiently stated a cause of action for breach of the duty of fair representation. *Id.* at 786. In so deciding, the court rejected the union's argument that distinguishing between current and former employees is "permissible and, thus, neither arbitrary nor discriminatory." *Id.* (citation omitted). To the contrary, the court ruled, the union "did not endeavor to balance the rights of these two classes of employees; it quite simply failed to represent plaintiffs at all." *Id.*

*Baker* is distinguishable from this case. In *Baker*, it was alleged that the union had never advocated for the interests of retired employees. *See id.* at 784-86. Indeed, it was alleged that the union had rejected the employer's "offer to have the retroactive salary schedule apply to retirees." *Id.* at 784. Here, however, the PELRB specifically found that during the lengthy negotiations over the settlement, the Union "did not propose to exclude retired or other non-active troopers from the list of troopers to be compensated." The PELRB also found that the Union "satisfied its duty of fair representation" to all of the bargaining unit members, "including [the petitioner], when it successfully pursued a breach of contract claim against the State before the PELRB . . . and later before the Supreme Court." The PELRB further found that following the issuance of our opinion in *Appeal of New Hampshire Department of Safety*, 155 N.H. 201, "the Union demanded that the State comply with [our] decision and restore all leave for all troopers, including the retired troopers." In short, in this case, the

PELRB found that the Union advocated for the retired troopers initially, even though it ultimately entered into a settlement agreement that did not provide them with compensation.

The petitioner next asserts that "[t]he [Union's] decision . . . did not meet the threshold for fair representation because it was not based upon a reasoned decision regarding [his] claim or even the weighing of that claim against the claims of other bargaining unit members." He contends that absent "a weighing of the pros and cons of inclusion of retired troopers in the agreement, and more generally, the development of a reasonable standard for determining inclusion under the Agreement," the Union's decision to exclude retired troopers lacked a rational basis or explanation. The petitioner asserts that the Union could not possibly have engaged in such a balancing of interests because retired troopers, like him, received no remedy under the agreement.

Contrary to the petitioner's assertions, the PELRB found that the Union *did* balance the interests of retired troopers against those of active troopers when it entered into the settlement. The PELRB found that the Union's attorney informed the Union "that attempting to resolve retired troopers' compensation issue[s] would slow down negotiations," which would further delay a remedy to all bargaining unit members when bargaining unit members were, according to the Union, already "upset that this matter ha[d] been pending for so long." Although the petitioner argues that there is no record support for this finding, he is mistaken. This finding is supported by an e-mail from the Union's attorney as well as hearing testimony.

To the extent that the petitioner argues that the Union had to meet particularized standards for its decision to fall within the "wide range of reasonableness," *Marquez*, 525 U.S. at 45 (quotation omitted), we disagree. We decline to subject the Union's decision-making to such standards because doing so would not comport with the deference required by *Air Line Pilots*, 499 U.S. at 78.

■■■ The Supreme Court in *Air Line Pilots* rejected a similar argument. In that case, the Fifth Circuit Court of Appeals had ruled that for a union decision "to be non-arbitrary" it had to be: "(1) based upon relevant, permissible union factors . . . ; (2) a rational result of the consideration of those factors; and (3) inclusive of a fair and impartial consideration of the interests of all employees." *Air Line Pilots*, 499 U.S. at 72 (quotation and emphasis omitted). The Supreme Court ruled that this "refinement of the arbitrariness . . . standard authorizes more judicial review" of union decisions "than is consistent with national labor policy." *Id.* at 77. Like the Supreme Court in *Air Line Pilots*, we decline to "unduly constrain[ ] the

'wide range of reasonableness' within which unions may act without breaching their fair representation duty." *Id.* at 79 (citation omitted).

The petitioner next contends that "the overwhelming weight of testimony from the [Union's] own witness [was] that [the Union] was . . . motivated by a belief that it could not represent retired troopers." This belief, the petitioner asserts, was the Union's "exclusive motivation" for "failing to advocate" on behalf of the retired troopers. The Union, for its part, appears to agree with the petitioner that it decided, ultimately, to exclude retired troopers from the settlement agreement based upon advice from counsel.

The petitioner argues that the Union cannot satisfy its duty of fair representation by contending that it relied upon advice of counsel. *See Gregg v. Chauffeurs, Teamsters & Helpers U. Local,* 699 F.2d 1015, 1017 (9th Cir. 1983) (reliance on advice of counsel does not "insulate [a] union from liability for its breach of its duty to represent its members fairly"). While we agree with this general proposition, we conclude that where, as here, counsel's advice was itself reasonable given the legal landscape at the time, the Union's reliance on such advice was rational. *Letter Carriers (Postal Service),* 347 N.L.R.B. at 289.

Although the petitioner challenges other PELRB factual findings, they are not material to our decision and are supported by the record. Because the petitioner has failed to demonstrate by a clear preponderance of the evidence that the PELRB's order was unjust or unreasonable, we uphold it. *See Appeal of Laconia Sch. Dist.,* 150 N.H. at 496.

*Affirmed.*

DALIANIS, C.J., and HICKS, CONBOY and LYNN, JJ., concurred.