CARMEN SAGINARIO, PLAINTIFF-RESPONDENT, v. ATTORNEY GENERAL, STATE OF NEW JERSEY AND DIVISION OF STATE POLICE, DEFENDANTS-RESPONDENTS, AND STATE TROOPERS FRATERNAL ASSOCIATION OF NEW JERSEY, INC., DEFENDANT-APPELLANT.

Argued May 5, 1981—Decided October 8, 1981.

*Jerome J. LaPenna* argued the cause for appellant (*Cerreto & LaPenna,* attorneys).

*Philip M. Saginario* argued the cause for respondent Carmen Saginario.

*Melvin E. Mounts,* Deputy Attorney General, argued the cause for respondents Attorney General, State of New Jersey and Division of State Police (*James R. Zazzali,* Attorney General of New Jersey, attorney; *Erminie L. Conley,* Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

SCHREIBER, J.

This case involves the relationship among a public employee, his duly designated representative, and his public employer in the administration of the arbitration procedure provided in a collective negotiation agreement. More specifically, the question is whether a public employee, whose interests conflict with the position taken by the employees' majority representative in invoking and processing a matter through the grievance procedure and arbitration, must be given notice and the opportunity to be heard in those proceedings. Resolution of this question depends on interpretation of section 5.3 of the New Jersey Employer-Employee Relations Act, *N.J.S.A.* 34:13A-5.3.

On September 15, 1978 the plaintiff, Carmen Saginario, was promoted from the rank of State Trooper I to Sergeant in the Division of State Police (Division). On September 26, 1978 the State Troopers Fraternal Association of New Jersey, Inc. (Association), the exclusive representative for all troopers in the Division, instituted grievance procedures in accordance with the collective negotiation agreement between the Association and the Division, asserting that the promotion violated the agreement.

The agreement covered numerous matters relating to the terms and conditions of troopers' employment. One article was devoted to promotions, including promotions from Trooper I to Sergeant. Such promotions were to be based in part on a competitive written examination to be weighted at 34% and in part on five other factors to be weighted at 66%. These factors were "length of service," "performance rating," "record of con-

duct," "medical condition" and "ability to perform in the next higher rank or grade." The Division assigned a maximum number of points to each of these six factors and detailed a breakdown of points within each factor. For example, length of service with a maximum of five points was graded as follows:

$$
\begin{array}{rcl}
\text{7–10 years} & - & 1 \\
\text{10–15 "} & - & 2 \\
\text{15–20 "} & - & 3 \\
\text{Over 20 "} & - & 5
\end{array}
$$

The total maximum for all factors aggregated 66 points.

The Association, invoking the grievance procedure, claimed that plaintiff's points had been miscalculated in the categories of job-related experience and record of conduct and that the trooper with the highest overall promotional points should be promoted retroactive to the September promotion date. The basic grievance procedure consisted of five steps, the fifth step consisting of binding arbitration. Though a grievance could be initiated either by a trooper or the Association, only the Association could demand arbitration. The Division denied the Association's grievance and the matter progressed to arbitration. Plaintiff was not notified of any of the grievance or arbitration proceedings. Nor did he participate in the arbitration hearing.

The issue presented to the arbitrator by the Association and the State was whether plaintiff's promotion had violated the Agreement and, if so, what the remedy should have been. One witness, the secretary of the Division's promotional review board, testified. The remainder of the record consisted of a stipulation of facts, exhibits, and argument of counsel. The Association contended that plaintiff was entitled to 15, not 20, points for his job-related experience and to zero, rather than 3½, points for his record of conduct. The State argued that plaintiff's prior experience as a Sergeant justified the point total for job-related experience and that a prior disciplinary action was not relevant.

The arbitrator agreed with the Association and held the promotion should be rescinded and the trooper with the highest

overall promotional points should be promoted retroactive to September 8, 1978. On January 4, 1979 the arbitrator's determination was implemented by the Division and Saginario was returned to the rank of Trooper I.

Plaintiff then commenced two actions, one in lieu of prerogative writs in the Superior Court, Law Division, and the other an appeal to the Appellate Division. When the State asserted that the matter was properly before the Appellate Division as an appeal from a determination of the Division, the plaintiff agreed to dismiss the Law Division action without prejudice. The trial court entered a judgment of dismissal.

The Appellate Division, although conceiving the appeal before it to be from the decision of the arbitrator and therefore cognizable in the Law Division, decided to exercise its original jurisdiction in the interest of judicial efficiency. Premising its decision on this Court's opinion in *Donnelly v. United Fruit Co.,* 40 *N.J.* 61 (1963), the Appellate Division held that the arbitral award must be vacated and another arbitration hearing held in which Trooper Saginario would be permitted to participate. We granted the Association's petition for certification. 85 *N.J.* 467 (1981).

I

The Appellate Division, professing that it was "obliged to follow" *Donnelly v. United Fruit Co., supra,* held that the plaintiff could not be bound by the arbitration of which he had no notice and in which he had not been given an opportunity to participate. We find, however, that this case is not governed by *Donnelly* and that *Donnelly* itself is no longer sound. *Donnelly* involved an employer-union-employee relationship governed by the federal Labor Management Relations Act, 29 *U.S.C.* § 141 *et seq. Donnelly* also predated *Vaca v. Sipes,* 386 *U.S.* 171, 87 *S.Ct.* 903, 17 *L.Ed.*2d 842 (1967), which undercut the foundation upon which *Donnelly* was based.

In *Donnelly*, we held that a private sector employee whose employment was subject to a collective bargaining agreement could not be deprived of the individual right to participate in an arbitration hearing when the union's position was adverse to the individual's interest, 40 *N.J.* at 81, and that the individual retained a right to invoke the provisions of the grievance procedure *pro se* when the union refused to process his grievance, *id.* at 92. Donnelly claimed that he had been discharged in violation of his contract, which eliminated the right to discharge an employee except "for cause." The union agreed with his employer that the discharge was proper and refused to proceed to arbitration. The contract apparently empowered only the union to take that step. Donnelly instituted suit against his employer for wrongful discharge and the union for failure to arbitrate the propriety of the discharge.

We construed sections 9(a) and 301 of the federal Labor Management Relations Act[1] to permit the employee to "intervene in arbitration proceedings and obtain independent representation, if the union is acting adversely to his interests as they

---

[1] Section 9(a) reads as follows:

(a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided,* That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: *Provided further,* That the bargaining representative has been given opportunity to be present at such adjustment. [29 *U.S.C.* § 159(a)] Section 301(a) reads as follows:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. [29 *U.S.C.* § 185(a)]

appear in, or derive from, the collective bargaining contract," 40 *N.J.* at 80–81. We concluded that "an individual employee has a statutorily vested right to present his grievance to, and to have it determined by, his employer when the union declines to process it in his behalf." *Id.* at 87.

The United States Supreme Court's analysis of this federal statute has led it to a different position. After holding in *Textile Workers Union v. Lincoln Mills,* 353 *U.S.* 448, 77 *S.Ct.* 912, 1 *L.Ed.*2d 972 (1957), that section 301 encompassed substantive rights and in *Republic Steel Corp. v. Maddox,* 379 *U.S.* 650, 85 *S.Ct.* 614, 13 *L.Ed.*2d 580 (1965), that the employee was required to invoke and exhaust the contractual grievance procedures before resorting to judicial remedies, the Supreme Court substantially completed the outline of an employee's rights in the private sector in *Vaca v. Sipes,* 386 *U.S.* 171, 87 *S.Ct.* 903, 17 *L.Ed.*2d 842 (1967). There an employee sued his union for failure to process to arbitration his grievance, which arose out of his discharge. *Id.* at 173, 87 *S.Ct.* at 907, 17 *L.Ed.*2d at 848. The Court held that the employee did not have a right to compel the union to invoke arbitration and thus disregard the terms of the collective bargaining agreement. In reaching this holding the Court relied upon the following considerations: (1) the employer and union contemplated that each would endeavor to settle grievances short of arbitration; (2) the employer and union wanted frivolous grievances disposed of prior to costly and time consuming arbitration; (3) the settlement process would further the interest of the union as statutory agent and as coauthor of the negotiation agreement in representing the employees in enforcement of that agreement; (4) to permit the employee to compel arbitration would undermine the settlement machinery and destroy the employer's confidence in the union.

However, under *Vaca* the employee was not left without any remedy. The union owed a duty "of fair representation in its handling of the employee's grievance" and therefore the

employee [could] bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee

[could] prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance. [*Id.* at 186, 87 *S.Ct.* at 914, 17 *L.Ed.*2d at 855]

In *Hines v. Anchor Motor Freight, Inc.,* 424 *U.S.* 554, 96 *S.Ct.* 1048, 47 *L.Ed.*2d 231 (1976), the Supreme Court was confronted with a situation in which the employees' discharge had been upheld in arbitration. The employees sued the employer for breach of contract and the union for breach of the union's duty of fair representation because of its failure to investigate and present a defense that would have shown no disciplinary action was warranted. The trial court dismissed the claim against the employer on the ground that the arbitration award was final and binding on the employees. The Supreme Court, reversing, held that the union's breach of duty relieved the employees of an express or implied requirement that disputes be settled through contractual grievance procedures and, since the union's breach seriously undermined the integrity of the arbitral process, it also removed the bar of the finality provisions of the contract. *Id.* at 567, 96 *S.Ct.* at 1057, 47 *L.Ed.*2d at 243. Thus, the arbitration award could be vacated and the employees would be entitled to an appropriate remedy against the employer and the union.

Nowhere in this federal scheme does the individual have the right to pursue his grievance to arbitration when the contract gives that right only to the union. Professor Kaden has pointed out that *Vaca* and *Hines* yield "the conclusion that the collective bargaining agreement confers rights [with respect to use of grievance procedures] only upon the collective interests who execute it: the union and the employer. The union's basic right is its control of and access to the grievance machinery, which the employer is obliged to respect; the employer's basic right is that of enforcement of the union's promise not to strike during the contract term." Kaden, "Judges and Arbitrators: Observations on the Scope of Judicial Review," 80 *Colum.L.Rev.* 267, 279 (1980).

Nowhere does *Vaca* suggest that the employee be allowed to intervene in the arbitration procedure. If the employee were allowed to intervene and participate in the arbitration proceeding, it would undercut the legitimacy of the arbitration, predicated as it is on terms of the contract that the parties have voluntarily made. The individual employee's claim against his employer and the union is therefore conditioned on the duty of fair representation owed to him by the union. It is this failure of fair representation that impelled the Court in *Vaca* and *Hines* to sanction a suit by the individual employee. Bad faith and arbitrariness on the part of the union triggers the breach of the duty of fair representation, which in turn permits the individual to have recourse to the courts and to vacate the arbitral award.

The Appellate Division has doubted the continued viability of *Donnelly*. *Zalejko v. Radio Corp. of America*, 98 *N.J.Super.* 76, 81–82 (App.Div.1967), certif. den. 51 *N.J.* 397 (1968) ("to the extent that [*Donnelly*] conflicts with *Vaca v. Sipes*, [it] must yield in favor of the latter's declaration of the applicable law"). See *Vaca v. Sipes*, 386 *U.S.* at 191 & n.13, 87 *S.Ct.* at 917 & n.13, 17 *L.Ed.2d* at 858 & n.13; Kaden, *supra*, 80 *Colum.L.Rev.* at 278. *Donnelly*, relying as it does on the Labor Management Relations Act, can no longer be considered viable precedent after *Vaca* and *Hines*.

Indeed, plaintiff Saginario, is a state employee whose relationship with the Division of State Police as his employer is not governed by the Labor Management Relations Act. 29 *U.S.C.* § 152(2). Therefore, even *Vaca* does not control the disposition of this case.

## II

Saginario was not in the classified civil service, see *State Troopers Frat. Assoc. v. State*, 62 *N.J.* 302 (1973). His employment rights at issue here were created and governed by the collective negotiation agreement between the State Troopers Fraternal Association of N.J., Inc., the union representing state

troopers, and the State. The lawfulness of that agreement stems from Article I, par. 19 of the State Constitution providing that "[p]ersons in public employment shall have the right to ... present to and make known to ... [public employers] their grievances and proposals through representatives of their own choosing" and the New Jersey Employer-Employee Relations Act, *N.J.S.A.* 34:13A–1 *et seq.*, providing that representatives designated by public employees may engage in collective negotiation as exclusive representative of the employees concerning their terms and conditions of employment. Pursuant to the authority granted by the Constitution and the Act, the State entered into this collective negotiation agreement with the Association.

Since Saginario's right to the promotion in the first place was based on the terms of the agreement entered into as a result of the collective negotiation, it is necessary to examine the dispute resolution mechanism in that contract in the context of *N.J.S.A.* 34:13A–5.3 and to determine whether that mechanism satisfies any rights he may have under the statute. The agreement defines grievances to include an improper application of its terms and misinterpretation of rules, regulations, policy or procedures affecting the terms and conditions of employment. It provides that every trooper "shall have the right to present his grievance in accordance with the procedures prescribed ...." The grievance procedure consists of five steps, the fifth being arbitration. A State Trooper or the Association may present a grievance at the first step. However, grievances involving the issue of promotion may be filed initially at step three, as was done in this case, but *only* the union may initiate grievances commencing in step three and beyond. When, as here, the majority's representative's position is in direct conflict with the employee, the question then remains whether, in this instance, the contractual grievance procedure satisfies the statutory criteria.

The New Jersey Employer-Employee Relations Act, *N.J.S.A.* 34:13A–1 *et seq.*, authorizes the majority representative to meet

and negotiate with the employer "with respect to grievances." *N.J.S.A.* 34:13A–5.3. The last paragraph also provides:

Public employers shall negotiate written policies setting forth grievance procedures *by means of which their employees or representatives of employees* may appeal the interpretation, application or violation of policies, agreements, and administrative decisions affecting them, provided that such grievance procedures shall be included in any agreement entered into between the public employer and the representative organization. Such grievance procedures may provide for binding arbitration as a means for resolving disputes. Notwithstanding any procedures for the resolution of disputes, controversies or grievances established by any other statute, grievance procedures established by agreement between the public employer and the representative organization shall be utilized for any dispute covered by the terms of such agreement. [*Ibid.* (emphasis added)]

This statute clearly permits the parties to include dispute resolution mechanisms, including arbitration, in the negotiated agreement. Does the statute permit the employees' association to foreclose an employee from utilizing that grievance procedure when the public employee has a dispute involving the terms of the agreement which satisfy the substantive requirements of a grievance as defined in the contract? The first sentence quoted above is written in the alternative—the grievance procedures shall prescribe the means by which "employees or representatives of employees" may be heard. It can be read to authorize alternative choices, enabling the parties to decide who, the employee or the union, shall initiate and process grievances to and including arbitration. We have previously rejected such an interpretation in *Red Bank Reg. Educ. Ass'n v. Red Bank Reg. High Sch. Bd. of Educ.*, 78 *N.J.* 122 (1978). There the contract authorized only the employee to initiate a grievance. We agreed with the employees' association that employees have a constitutional right under the New Jersey Constitution (1947), Art. I, par. 19, to have their majority representative present grievances on behalf of employees and that "public employees could not constitutionally be limited to presenting their grievances personally." 78 *N.J.* at 136. We concluded that *N.J.S.A.* 34:13A–5.3 "must be read as according the majority representative ... of the unit employees, the right to initiate an organiza-

tional grievance when requested to do so by a unit employee who claims that he has been aggrieved by an action of the public employer." 78 *N.J.* at 137. Therefore the contract had to provide the majority representative with the right to utilize the grievance procedure.[2]

The legislative intent to afford the public employee participation in the grievance procedure when he is directly involved in the dispute is underscored by the last sentence in the statute quoted above, which, in brief, states that grievance procedures shall be utilized for any dispute covered by the terms of the contract. That sentence was added by a 1974 amendment. *L. 1974, c. 123,* § 4. Literally, it mandates the use of the grievance procedures established by the collective negotiation agreement "for any dispute covered by the terms of such agreement" and governs all disputes arising out of the rights and duties created by the contract.

One other provision of the Act should be mentioned. In *N.J.S.A.* 34:13A–5.4 the Public Employment Relations Commission has been authorized to prevent an employee organization from "[i]nterfering with, restraining or coercing employees in the exercise of the rights guaranteed by this act." *N.J.S.A.*

---

[2]In *Lullo v. Intern. Assoc. of Fire Fighters,* 55 *N.J.* 409 (1970), we held that the legislative decision in *N.J.S.A.* 34:13A–5.3, authorizing a majority representative as the exclusive authority to negotiate a contract governing the terms and conditions of a group of public employees, was constitutional. *Lullo* pointed out that in the private sector it was settled that the majority representative could have the exclusive right to process all employees' grievances, citing *Vaca v. Sipes, supra,* for that proposition. 55 *N.J.* at 432. *Lullo* did not decide whether that preclusion could automatically apply to an individual public employee's right to present and process his grievance. *Id.* at 435–36. The only constitutional right mentioned in *Lullo* was that which an individual might have under Art. I, par. 19 of the New Jersey Constitution, *viz.* providing that public employees may organize and present their grievances through representatives of their own choosing. See *N.J. Turnpike Employees Union v. N.J. Turnpike Auth.,* 64 *N.J.* 579 (1974), aff'g 123 *N.J.Super.* 461 (App.Div.1973), and *Red Bank Reg. Educ. Ass'n v. Red Bank Reg. High Sch. Bd. of Ed., supra,* wherein we also refrained from ruling on the same constitutional question.

34:13A–5.4(b)(1). This provision seeks to insure that unions will not frustrate rights guaranteed employees under the Act. Central to the theme of this section is the protection to be afforded the employee to have his grievance presented to the employer. Consonant with that notion is an interpretation of *N.J.S.A.* 34:13A–5.3 so as to provide that the grievance procedure afford the employee an opportunity to be heard.[3]

Whether section 5.4(b)(1) encompasses an obligation on the part of a union to process an employee's grievance through the grievance procedures, including arbitration, as provided in the contract is unclear.[4] Its applicability is particularly doubtful here. This is not simply a case of fair representation in the classic sense of *Vaca*, but rather one in which the organization position was advanced in good faith, was not arbitrary, and favored another employee. There is a direct conflict of interest. No party has sought to invoke PERC's jurisdiction under the statute and we need not decide applicability of section 5.4(b)(1). See *Kaczmarek v. New Jersey Turnpike Authority*, 77 *N.J.* 329, 345–46 (1978) (Pashman, J., concurring) (union refused to pursue arbitration in discharge case, but we did not pass upon whether violation of fair representation was included in section 5.4(b)(1)).[5]

---

[3]We are not unmindful that a public employee may have constitutional rights to be heard when he faces deprivation of his position despite a statutory or contractual entitlement creating a property interest. See *Board of Regents v. Roth,* 408 *U.S.* 564, 576–77, 92 *S.Ct.* 2701, 2708–09, 33 *L.Ed.2d* 548, 560–61 (1972); *Cunningham v. Dep't of Civil Service,* 69 *N.J.* 13 (1975); *Connors v. City of Bayonne,* 36 *N.J.Super.* 390, 398 (App.Div.1955), certif. den., 19 *N.J.* 362 (1955). We need not decide whether Saginario's right to the job constitutes a property interest deserving constitutional protection in view of our statutory interpretation.

[4]*N.J.S.A.* 34:13A–5.4(a)(5), for example, expressly makes it an unfair practice for an employer to refuse "to process grievances presented by the majority representative."

[5]PERC has accepted jurisdiction under *N.J.S.A.* 34:13A–5.4(b)(1) of an unfair practice claim filed against the union by an employee for failure to file

We are aware of the policy reasons supporting the position that initiating and processing grievances should be entrusted exclusively to the union. These were discussed in *Vaca* and have been noted above.[6] Perhaps a more compelling factor leading to the opposite conclusion here is the statutory requirement that the contract creating the employee's interest also entitles him to the use of the machinery for dispute resolution with respect to the very controversy set up in that contract. This accords with the public policies expressed in the statute that the best interests of the people of this State are served by the prompt settlement of labor disputes in the public sector, *N.J.S.A.* 34:13A–2, which will be furthered if the entire controversy is resolved in one proceeding, and also that the contractual grievance procedures shall be utilized for any dispute covered by the terms of the agreement. *N.J.S.A.* 34:13A–5.3. Moreover, access to the grievance procedure by the employee will eliminate possible conflicting results and remedies by different forums.

Clearly the plaintiff has an important interest at stake and he, as other public employees, should be treated fairly and evenly. His union representative cannot represent him since the union position is in direct conflict with his. Moreover, the employee

a grievance on his behalf. *In the Matter of Board of Chosen Freeholders of Middlesex County,* 6 NJPER 555 (¶ 11282, 1980); *AFSCME, Council No. 1,* 5 NJPER 21 (¶ 10013, 1978); *N.J. Turnpike Employees Union,* 5 NJPER 412 (¶ 10215, 1979); *N.J. Turnpike Authority,* 6 NJPER 560 (¶ 11284, 1980). In each decision involving the charge against the employees' organization, PERC has found no violation of the duty of fair representation. In none of the opinions did it rationalize the basis for its jurisdiction. PERC has held that unfair practice claims against the employer cannot be maintained unless the employee first demonstrates that the majority representative violated its duty of fair representation. However, it has not yet conclusively determined that, even if that condition precedent is satisfied, such an individual charge can be maintained. See *In re New Jersey Turnpike Authority,* 6 NJPER 106 (¶ 11055, 1980).

[6]This position has been advocated by Professor Cox, "Rights Under a Labor Agreement," 69 *Harv.L.Rev.* 601 (1972). The contrary view has been expressed by Professor Summers, "Individual Rights in Collective Agreements and Arbitration," 37 *N.Y.U.Law Rev.* 362 (1962).

should not have to rely on the public employer to present his contention, for their interests are not identical. The public employer may be concerned with little more than liability for back pay and face saving, whereas the employee's exposure is much greater. The employee understandably would have less than full confidence in the public employer's representation since the employer has no obligation to provide such representation. The employee merely seeks access to a fair hearing where he has the opportunity to be heard to enforce what he contends the contract grants him. Since the public employer and the majority representative have created certain benefits for the employee, they should not be able to ban him from the grievance procedure chosen to help give those benefits life and meaning.[7]

---

[7]Justice Clifford's dissenting and concurring opinion adopts the position that the Association violated its duty of "fair representation" owed to the plaintiff. Therefore, he contends the arbitration award should be set aside and the plaintiff should be given the opportunity to present his grievance at the first step in the grievance procedure. We find it unnecessary to decide whether the Association's statutory duty of fair representation included the obligation to permit the plaintiff to be heard in the organization's grievance proceedings.

We do observe, however, that this reasoning appears to undercut the proposition that the majority representative has the exclusive authority on behalf of all public employees to negotiate and enter into a contract with the public employer setting up a grievance procedure including arbitration which may be triggered and carried on only by the union. In the absence of a statute, constitutional provision or public policy, there seems to be no reason why the initiation and processing of all grievances may not be entrusted to the union, provided the parties (the union and the employer) so agree. This is the clear implication of *Vaca* and *Hines,* which upheld actions in the private sector of employees against the union and employer for damages. Those actions did not hold that the employee had a right to be heard in the grievance proceedings. Rather, the Supreme Court recognized that the grievance procedure as provided in the contract between the union and employer in the private sector was preemptive. The employee's relief when the union breached its duty of fair representation was in an *independent action* for damages for that breach. Recognition of a public employee's right to participate in the grievance procedure, when that right is expressly conferred in the contract upon the union, arguably undercuts the underlying principle of *Vaca.*

The Division of Police promoted Saginario to the position of sergeant, after applying the criteria specified in the collective negotiation agreement. It weighted these criteria by employing what it considered to be proper evaluation guidelines. When the Association subsequently objected to the promotion, the Association instituted its grievance at the third step in the grievance process. Saginario had no notice of this action and under the contract had no right to be heard. If the proceeding had started at the first step, then Saginario could have legitimately contended that he had a right to be heard and such a hearing would have satisfied the statutory mandate and, in the absence of a contractual provision, he would not have had a right to carry the matter further. See *New Jersey Turnpike Authority*, 6 *NJPER* 560 (¶ 11284, 1980) (employee has no right to compel union to proceed to arbitration where he had the right to present his grievance at a prior step in the grievance procedure). However, under the somewhat unusual circumstances here, he was foreclosed. He should not have been. Since the matter has proceeded through arbitration, we believe that proper relief will be to permit him to participate and be heard in a

---

Moreover, we also note that the Supreme Court's concept of "fair representation" is a limited one. It has held that "[a] breach of the statutory [Labor Management Relations Act] duty of fair representation occurs *only* when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 *U.S.* at 190, 87 *S.Ct.* at 916, 17 *L.Ed.*2d at 857 (emphasis supplied). This case does not come within that pattern. The dissenting and concurring opinion agrees that though the Association's conduct was not arbitrary, discriminatory or in bad faith, it still had an obligation to present the employee's case. The opinion relies for its broadened interpretation of fair representation on an opinion of the Eighth Circuit Court of Appeals, *Smith v. Hussman Refrigerator Co.*, 619 *F.*2d 1229 (8th Cir.), *cert.* den., 449 *U.S.* 839, 101 *S.Ct.* 116, 66 *L.Ed.*2d 46 (1980). We are not, however, prepared in the context of this case to regard *Smith* as a convincing precedent. Consequently, we choose not to consider the alleged breach of the duty of fair representation as an alternative thesis for our determination.

new arbitration proceeding rather than remanding the matter to the third step of the grievance procedure.[8]

### III

■ The Appellate Division referred to the "procedural anomalies" implicit in this appeal. We agree with the Appellate Division that the proper procedure was the action instituted in the Law Division of the Superior Court attacking the finality of the arbitration award. Since the matter had proceeded to the last step in the contractual grievance procedure, we also agree, as observed above, that the entire controversy should be resubmitted to arbitration with full participation by Saginario as party. As such he should bear his proportion of the costs of the arbitration as provided in the contract. We do not pass upon or suggest what the appropriate remedy should be if the plaintiff prevails.

■ In summary we hold that where a public employee has a substantial interest arising out of the agreement entered into between the State and the majority representative of the employees as a result of collective negotiations and the agreement provides for a grievance mechanism to resolve disputes arising out of the agreement including the particular dispute of the public employee, then the public employee is entitled to be heard within that dispute mechanism either through his majority representative or, if his position is in conflict with the majority

---

[8]The dissenting and concurring opinion's position that Saginario should not properly have been involved in the union's grievance, *infra* at 499–500, entails a rigid approach to the contractual language of what constitutes a grievance and fails to give sufficient weight to the statutory requirement that the grievance procedures "shall be utilized for any dispute covered by the terms of such agreement." To argue that Saginario was not concerned with the Association's grievance is unrealistic. The issues raised in the Association's grievance are identical to any grievance which may have been filed by Saginario. The opinion ultimately recognizes as much when it concludes the plaintiff should be permitted to participate in the new organizational grievance.

representative, then through his personal representative or *pro se.*

The judgment of the Appellate Division is affirmed as modified herein.

CLIFFORD, J., concurring in part and dissenting in part.

I join fully in Part I of the Court's opinion and in the affirmance of the Appellate Division judgment reached in Part II. I suggest, however, that the scope of the Court's remedy—resubmission of the matter to arbitration with notice to and full participation by plaintiff—is contrary to the applicable provisions of the Employer-Employee Relations Act and the mechanics of the grievance procedure established by the collective negotiation agreement. More important, I believe that the wrong route has been taken to achieve that remedy. Rather than warp the provisions of *N.J.S.A.* 34:13A–5.3, with respect to the statutory rights of individual employees in the arbitration of organizational grievances, I would rest the decision on a breach of the State Troopers Fraternal Association's (STFA's) duty of fair representation as developed in the landmark case of *Vaca v. Sipes,* 386 *U.S.* 171, 87 *S.Ct.* 903, 17 *L.Ed.*2d 842 (1967), and its progeny.

I

Article I, paragraph 19 of the New Jersey Constitution provides that "[p]ersons in public employment shall have the right to * * * present to and make known to * * * [public employers] their grievances and proposals through representatives of their own choosing." As stated by this Court in *Lullo v. Int'l Ass'n of Fire Fighters,* 55 *N.J.* 409 (1970), the delegates to the 1947 Constitutional Convention left it to the Legislature "to both substantively and procedurally flesh out the constitutional guarantees." *Id.* at 416. The Court in *Lullo* recognized that
[t]he decision as to whether there should be a single representative to speak exclusively for all the employees, or multiple representatives to speak for different groups of employees or whether an individual employee should have

the right to represent himself in all dealings with his employer, or whether all three forms of representation should be authorized, was left to the Legislature. [*Id.* at 415.]

The Legislature responded to Article I, paragraph 19 by enacting the New Jersey Employer-Employee Relations Act, L.1968, c. 303, codified in *N.J.S.A.* 34:13A–1 to –21. Section 7 of the Act, *N.J.S.A.* 34:13A–5.3, provides that the representative duly designated or selected by a majority of the public employees in an appropriate unit shall be the exclusive representative of all employees in the unit. See *Lullo, supra,* 55 *N.J.* at 412. The last paragraph of *N.J.S.A.* 34:13A–5.3 provides:

> Public employers shall negotiate written policies setting forth grievance procedures by means of which their employees or representatives of employees may appeal the interpretation, application or violation of policies, agreements, and administrative decisions affecting them, provided that such grievance procedures shall be included in any agreement entered into between the public employer and the representative organization. Such grievance procedures may provide for binding arbitration as a means for resolving disputes. Notwithstanding any procedures for the resolution of disputes, controversies or grievances established by any other statute, grievance procedures established by agreement between the public employer and the representative organization shall be utilized for any dispute covered by the terms of such agreement.

Pursuant to this statutory provision, the STFA and the Division of State Police (Division) entered into a collective negotiation agreement whereby a grievance could be presented to supervisory representatives of the Division either by a trooper individually or by the STFA, but only the STFA could process the grievance to final and binding arbitration, the fifth step of the contractually-established grievance procedure. This is in keeping with the suggestion in *Red Bank Reg. Educ. Ass'n v. Red Bank Reg. High School Bd. of Educ.,* 78 *N.J.* 122 (1978), that *N.J.S.A.* 34:13A–5.3 permits individual employees within the unit to enjoy at least a concurrent right with their majority representative with respect to the *presentation* of their grievances. 78 *N.J.* at 135–36. However, this Court has never answered the question of whether the individual public employee enjoys a right of constitutional or statutory dimension to *process* his own grievances to arbitration when the collective agreement does not so provide. See *Lullo, supra,* 55 *N.J.* at

435–36; *N. J. Turnpike Employees Union v. N. J. Turnpike Auth.*, 64 *N.J.* 579, 581–85 (1974); *Red Bank, supra,* 78 *N.J.* at 134–35. The full application of the principles of union exclusivity emphasized in *Vaca v. Sipes, supra,* to public sector labor relations would require that this question be answered in the negative, at least when the collective agreement gives the union exclusive discretion to submit employees grievances to arbitration. When considered in light of the clear language of *N.J.S.A.* 34:13A–5.3 and this Court's prior interpretation of that statute, the majority opinion muddles the developing law of public sector labor relations.

## II

The Court's statutory interpretation rests on the premise that the pertinent question is whether "the statute permit[s] the employee's association to foreclose an employee from utilizing that grievance procedure when the public employee has a dispute involving the terms of the agreement that satisfy the substantive requirements of a grievance as defined in the contract." *Ante* at 490. This unduly broad phrasing of the issue not only leads to faulty statutory analysis, but also misleads in its assumption of two crucial facts that simply do not exist here.

First, at the time of the STFA's presentment of its organizational grievance on behalf of the unit as a whole, Saginario did not have the substantive basis for presenting a "grievance" against the Division as defined in Article IX of the collective agreement. At that time he had no grounds upon which to allege "[a] breach, misinterpretation or improper application of the terms of [the] Agreement; or a * * * violation, misinterpretation or misapplication of the written rules and regulations, policy or procedures affecting the terms and conditions of employment." As far as he was concerned, the Division had properly applied the promotional provisions of the agreement when it granted his promotion to the rank of Sergeant. In its failure to acknowledge this basic circumstance the majority

distorts the contractual definition of a "grievance" presentable by an employee under the negotiated grievance procedure contained in the collective agreement. It was simply not Saginario's grievance that the STFA presented and processed to arbitration. Rather, it was the STFA's organizational grievance presented on behalf of the entire unit, alleging that the Division had improperly applied the promotional provisions of the collective agreement by promoting Saginario out of turn. The STFA filed and processed the organizational grievance in order to effectuate the right of the majority of the unit employees to have *their* grievance over the Division's alleged misapplication of the promotional provisions of the agreement presented to the Division through their collectively chosen representative.

There is an obvious difference between an organizational grievance initiated by the union on behalf of the majority of unit employees on the one hand and a grievance initiated by an individual employee on the other. The applicable statute gives the employee the right to have *his* grievance presented to the employer, not necessarily to intervene in *the union's* organizational grievance. This basic distinction cannot be glossed over by calling the entire matter a "dispute" rather than an employee grievance under *N.J.S.A.* 34:13A–5.3. Manipulation of the pertinent nomenclature expands by judicial fiat the agreement's substantive definition of a "grievance."

The second unwarranted assumption is that the STFA did actually "foreclose [Saginario] from utilizing [the] grievance procedure" once he had a basis for initiating his own grievance against the Division under the agreement. See *ante* at 490. Saginario did not have the substantive basis for presenting his own grievance, alleging that there had been an improper application of the terms of the collective agreement, until such time as the Division rescinded his promotion as improperly granted. It is the grievance arising from *that* adverse action that is the grievance the statute and the collective agreement provide he can present individually to the Division. He was not refused permission by either the STFA or by the Division to present that

individual grievance.  Rather, instead of seeking relief through the contractual grievance procedure, he immediately proceeded to the Law Division and Appellate Division to challenge the arbitral award.

However, an obvious practical problem would have arisen had Saginario then attempted to file his own grievance to challenge the rescission of his promotion.  The Division would have relied on the contractual language that the decision of the arbitrator is "final and binding" and bars reconsideration of the merits of the same issues that were fully considered and decided in the arbitration of the union's organizational grievance.  The STFA would have refused to process Saginario's grievance to arbitration, declining to seek a remedy that would effectively reverse the arbitrator's decision and award in its favor that resulted from its organizational grievance.  Thus unsatisfied in the presentment stages of the grievance procedure, and without the right to compel the submission of his grievance to arbitration when rejected by his exclusive representative, Saginario would have had to seek a remedy at law by filing a complaint in the Law Division [1] or an unfair practice charge with PERC,[2] alleging that the STFA had breached its duty of fair representation.

---

[1] The majority is correct in addressing itself to the "procedural anomalies" of this case and in recognizing that this matter should not have proceeded to the Appellate Division as an appeal under *R.* 2:2–3(a)(2) from the "final decision or action" of an administrative agency.  See *ante* at 496.  However, the majority incorrectly states that the proper procedure was an action under *N.J.S.A.* 2A:24–7, –8 for vacation of the arbitration award.  The grounds upon which a court may vacate an arbitral award are restricted to those specified in *N.J.S.A.* 2A:24–8.  *Kearny PBA Local 21 v. Town of Kearny,* 81 *N.J.* 208, 221 (1979).  An individual employee who challenges a labor arbitration award on the ground that his exclusive majority representative mishandled or abandoned his interests during the course of grievance arbitration proceedings has no substantive remedy under *N.J.S.A.* 2A:24–8.  See *DeMarco v. Thatcher Furnace Co.,* 102 *N.J.Super.* 258, 269 (Ch.Div.1968); *O'Brien v. Curran,* 106 *N.H.* 252, 209 *A.2d* 723, 727 (1954).  Rather, the employee's remedy is to attack the award in the context of a claim against the union for breach of its duty of fair representation.  Kaden, *Judges and Arbitrators: Observations on the Scope of Judicial Review,* 80 *Colum.L.Rev.*

267, 279 (1980); Comment, *Employee Challenges to Arbitral Awards: A Model for Protecting Individual Rights Under the Collective Bargaining Agreement*, 125 *U.Pa.L.Rev.* 1310, 1312 (1977).

Aside from Saginario's lack of a substantive basis in the arbitration statute upon which to mount an attack on the arbitral award, he had no standing to challenge the award under the statute. *N.J.S.A.* 2A:24–7 provides in pertinent part that "[a] party to the arbitration may * * * commence a summary action" in the appropriate trial court in order to vacate or confirm an arbitral award. An individual employee is not viewed as a formal party to grievance arbitration provided for in a collective agreement that limits power to invoke arbitration exclusively to the discretion of the union. See Comment, *supra*, 125 *U.Pa.L.Rev.* at 1327 & n. 77. Only the union and the employer, as formal parties to the collective agreement, have standing to attack the award on the bases specified in the arbitration statute. See *DeMarco, supra*, 102 *N.J.Super.* at 269; *O'Brien v. Curran, supra*, 209 *A.2d* at 727; Kaden, *supra*, 80 *Colum.L.Rev.* at 279; Comment, *supra*, 125 *U.Pa.L.Rev.* at 1312. The individual employee "who wishes to challenge the award—either because he believes the arbitrator was substantively or procedurally in error, or because he feels his union failed to represent him adequately—must follow an entirely different procedure." Comment, *supra*, 125 *U.Pa.L.Rev.* at 1312. He "must attack the award in the context of a suit against his union for breach of its duty of fair representation." *Id.* See Kaden, *supara*, 80 *Colum.L.Rev.* at 279.

[2]It is now an accepted component of the practice of public sector labor relations law that PERC has jurisdiction to adjudicate and remedy a breach of the duty of fair representation as an unfair practice under *N.J.S.A.* 34:14A–5.-4(b)(1). *In re Middlesex County*, 6 *N.J.P.E.R.* 560 (¶ 11282 1980); *In re N. J. Turnpike Auth.*, 6 *N.J.P.E.R.* 560 (¶ 11284 1980); *In re N. J. Turnpike Employees Union, Local 194*, 5 *N.J.P.E.R.* 412 (¶ 10215 1979); *AFSCME, Council No. 1*, 5 *N.J.P.E.R.* 21 (¶ 10013 1978). In noting these cases, the majority states that in none of its opinions has PERC "rationalize[d] the basis for its jurisdiction." *Ante* at 493 n. 5. It is clear, however, that the Employer-Employee Relations Act entrusts PERC with the authority to process claims of unfair practices against public employee representatives and to issue appropriate remedial orders under *N.J.S.A.* 34:13A–5.4(c). See, *e. g., Kaczmarek v. N. J. Turnpike Auth.*, 77 *N.J.* 329, 336–37 (1978). The private sector counterpart of *N.J.S.A.* 34:13A–5.4(b)(1) under the National Labor Relations Act is section 8(b)(1)(A), 29 *U.S.C.* § 158(b)(1)(A), which has been held to encompass claims of unfair representation.

Although this Court's adherence to the principles of *Vaca* suggests that our state courts have concurrent jurisdiction over employee complaints of unfair union representation, see *Vaca, supra*, 386 *U.S.* at 187–88, 87 *S.Ct.* at 915–916, 17 *L.Ed.2d* at 856; *Kaczmarek, supra*, 77 *N.J.* at 345–46 (Pashman, J., dissenting); *Corso v. Local Union 153*, 123 *N.J.Super.* 121, 122–23 (App.Div.), certif. den., 63 *N.J.* 556 (1973); *P. T. & L. Constr. Co. v. Teamsters Local 469*, 131 *N.J.Super.* 104, 110 (Law Div.1973), aff'd, 66 *N.J.*

The result under this strictly-administered procedure is that Saginario would not have had the opportunity to present *his grievance* to the Division until the issue of the propriety of his promotion was settled adversely to him by final and binding arbitration between the union and his employer, without any notice to or participation by him. In its effort to reach a result whereby Saginario would be afforded the opportunity for participation in the grievance arbitration procedure that effectively resolved the question of the propriety of his promotion, the Court has engaged in statutory interpretation that finds no support in either logic or policy.

The Court construes *N.J.S.A.* 34:13A–5.3 to afford the employee notice and an opportunity to be heard individually in his majority representative's organizational grievance, and presumably in all grievances wherein the representative's position directly conflicts with the individual interests of that employee. Accordingly, the Court orders rearbitration of the union's organizational grievance with notice to and individual participation by the adversely affected employee.

The statute, however, does not require that a collective negotiation agreement provide employees with a right to process their *own* grievances beyond the presentment stage—that is, it confers no right on an employee to force the submission of *his own grievance* to arbitration. How then can it be construed as authority for finding a statutorily-vested right of an employee to force himself into the arbitration stage of *his union's grievance* presented and processed on behalf of every unit employee *but* him? As *N.J.S.A.* 34:13A–5.3 will now be interpreted, the employee has no statutory right to compel arbitration even where he had the right to present his grievance at a prior step in the grievance procedure, but he has a statutory right to compel

---

97 (1974), the interests of public sector employees in the relatively inexpensive and expeditious disposition of their claims by application of PERC's specialized knowledge and expertise require that we encourage rather than question PERC's jurisdiction over such claims.

his union and employer to allow his intervention into someone else's grievance—one not even presented by him or on his behalf. To be consistent with the settled interpretation of *N.J.S.A.* 34:13A–5.3, the individual employee's right to be notified of the union's grievance and have the opportunity to be heard in situations like this should be limited to those early presentment stages of the grievance procedure in which the agreement would have allowed the employee to proceed individually had it been his own grievance.

### III

An individual employee may challenge an otherwise final and binding arbitral award by establishing that his rights and interests were not represented fairly and in good faith by the union in the grievance arbitration procedure. *Hines v. Anchor Motor Freight, Inc.*, 424 *U.S.* 554, 567, 96 *S.Ct.* 1048, 1057, 47 *L.Ed.2d* 231, 243 (1976). See *Davidson v. UAW Local 1189*, 332 *F.Supp.* 375, 377–78 (D.N.J.1971); *Corso v. Local Union 153*, 123 *N.J.Super.* 121, 123 (App.Div.), certif. den., 63 *N.J.* 556 (1973). See also Rabin, *The Impact of the Duty of Fair Representation upon Labor Arbitration*, 29 *Syracuse L.Rev.* 817, 860–61 (1978). The duty of fair representation under the National Labor Relations Act arises from the grant of exclusive status to the majority representative under § 9(a), 29 *U.S.C.* § 159(a). See *Humphrey v. Moore*, 375 *U.S.* 335, 84 *S.Ct.* 363, 11 *L.Ed.2d* 370 (1964); *Ford Motor Co. v. Huffman*, 345 *U.S.* 330, 73 *S.Ct.* 681, 97 *L.Ed.* 1048 (1953). The same duty of fair representation under the New Jersey Employer-Employee Relations Act arises from the grant of exclusive status to the majority representative under *N.J.S.A.* 34:13A–5.3, with respect to the administration of the contractual grievance arbitration procedure. See *Red Bank, supra,* 78 *N.J.* at 129, *Lullo, supra,* 55 *N.J.* at 426–27, 432–33. This Court has determined that the "experience and adjudication" from the federal legislative scheme serves as the appropriate guide by which to interpret the New Jersey statutory scheme. See, *e.g., Galloway Tp. Bd. of Educ. v. Galloway Tp. Ass'n of Educ.*

Secretaries, 78 *N.J.* 1, 9 (1978); *Lullo, supra,* 55 *N.J.* at 427–28, 432, 434.

The union's duty of fair representation, which attaches to all stages of the negotiation and administration process and is owed to all employees within the unit represented, is breached when the union's conduct toward a member of the appropriate unit is "arbitrary, discriminatory, or in bad faith." *Vaca, supra,* 386 *U.S.* at 190, 87 *S.Ct.* at 916, 17 *L.Ed.*2d at 857. There can be no question that in the instant case the union's duty of fair representation attached to the grievance procedure that settled Saginario's interest in his promotion. Saginario was an employee within the appropriate negotiation unit represented by the STFA, and processing grievances to arbitration was within the exclusive discretion of the STFA under the collective agreement's provisions governing the administration of the grievance procedure. In *Lullo,* this Court stated:

> The exclusivity concept carries with it an equally heavy responsibility toward dissident employees in the unit as for employee-members of the representative organization. [The exclusive representation] must always be exercised with complete good faith, with honesty of purpose and without unfair discrimination against a dissident employee or group of employees. This is true not only in the negotiating of the employer-employee agreement but in its administration as well. [55 *N.J.* at 427 (citing *Vaca v. Sipes,* 386 *U.S.* at 177, 87 *S.Ct.* at 909, 17 *L.Ed.*2d at 842).]

The majority reads the scope of the duty of fair representation far too narrowly when it states that the fair representation analysis is not applicable to this "direct conflict" of interest situation. The scope of the duty of fair representation is not limited to the *Vaca* factual context—that is, situations in which the union refuses to process an employee's grievance to the arbitration stage. Rather, the scope of the duty is in many ways much broader.

Application of the *Vaca* analysis establishes that the STFA did not breach its duty of fair representation merely by taking a stand on the merits of the organizational grievance, on behalf of the entire unit, that conflicted with the interests of a individual employee. The collective employee-employer relations system

"of necessity subordinates the interests of an individual employee to the collective interests of all employees in a bargaining unit." *Hines, supra*, 424 *U.S.* at 564, 96 *S.Ct.* at 1056, 47 *L.Ed.*2d at 241; *Vaca, supra*, 386 *U.S.* at 182, 87 *S.Ct.* at 912, 17 *L.Ed.*2d at 853. The realities of the collective representation system were recognized by the Supreme Court in *Ford Motor Co. v. Huffman, supra*:

> The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion. [345 *U.S.* at 337–38, 73 *S.Ct.* at 686, 97 *L.Ed.* at 1057–58.]

The union must be permitted to take a stand on the merits of particular grievances. *Vaca, supra*, 386 *U.S.* at 194, 87 *S.Ct.* at 918, 17 *L.Ed.*2d at 860. The Supreme Court has expressly declined to find a breach of fair representation when the union takes a good faith position on behalf of the majority of unit employees that will necessarily derogate the interests of some individual employees. *Humphrey v. Moore, supra*, 375 *U.S.* at 349, 84 *S.Ct.* at 371, 11 *L.Ed.*2d at 382. It has recognized that in the collective system "[c]onflict between employees represented by the same union is a recurring fact. To remove or gag the union in these cases would surely weaken the collective bargaining and grievance processes." *Id.* at 349–50, 84 S.Ct. at 372, 11 *L.Ed.*2d at 382. In such situations the union may take a position in favor of the collective interests of the majority "on the basis of an informed, reasoned judgment regarding the merits of the claims in terms of the language of the collective bargaining agreement." *Smith v. Hussmann Refrigerator Co.*, 619 *F.*2d 1229, 1237 (8th Cir. en banc), *cert.* den. *sub nom. Local 13889, United Steelworkers of America v. Smith*, 449 U.S. 839, 101 *S.Ct.* 116, 66 *L.Ed.*2d 46 (1980). See also *Belanger v. Matteson*, 115 *R.I.* 332, 346 *A.*2d 124, 131 (1975); *Theel v. Four Lakes Concrete Corp.*, 76 *L.R.R.M.* 2260, 2262 (W.D.Wis. 1971).

The record in the present case supports the STFA's contention that its decision to initiate the organizational grievance concerning plaintiff's promotion was based upon its good faith judg-

ment regarding the merits of the unit's interest in upholding the integrity of the promotion provisions of the collective negotiation agreement. If the STFA had not taken action against what it believed was the Division's unilateral change in the interpretation of the contractually established promotion criteria, the Division might have established a precedent of "management prerogative" that would have controlled the course of future employer-employee relations. The plaintiff alleges nothing that plausibly suggests that the STFA took its position on the merits of the organizational grievance in any other than a good faith, nonarbitrary and nondiscriminatory manner after investigating the underlying factual situation, without any personal hostility toward plaintiff.

Nonetheless, there remains for consideration the separate question of whether the STFA breached its duty of fair representation by failing to notify plaintiff of the grievance proceedings and afford him the opportunity for individual representation of his own interests. *Smith v. Hussmann, supra*, indicates that the union's duty to give notice to individual employees whose interests are abandoned by the union in grievance proceedings should be considered as a separate question of unfair representation. See 619 *F.*2d at 1241. That case involved a meeting to clarify an arbitral award in which the union took a position opposing plaintiffs' promotion by management in favor of other members of the unit. The Eighth Circuit, en banc, held that the union's failure to notify plaintiffs of the meeting with the arbitrator or to invite them to attend the session supported a jury determination that the union had breached its duty of fair representation. *Id.* at 1241.

There are no Supreme Court cases directly on point with respect to any such notice requirement. However, it is significant to note that in the somewhat analogous case of *Humphrey v. Moore, supra*, the Court considered notice and an opportunity to be heard relevant factors in assessing the fairness of the union's representation in a grievance arbitration hearing. 375 *U.S.* at 350, 84 *S.Ct.* at 372, 11 *L.Ed.*2d at 382. As interpreted

by the Eighth Circuit in *Smith v. Hussmann, supra,* the Supreme Court in *Humphrey v. Moore, supra,* after "holding that the union was entitled to take a position in the dispute between employees, carefully noted that the disfavored employees had been given notice of the hearing and that three stewards representing them were present at the hearing and given every opportunity to state their position." 619 *F.*2d at 1241 (citing *Humphrey v. Moore, supra,* 375 *U.S.* at 350, 84 *S.Ct.* at 372, 11 *L.Ed.*2d at 382). Not even that procedure was followed in the present case. Had Saginario been notified of the union's grievance from its inception, he could have communicated with a shop steward or a member of the grievance committee to discuss the merits of the competing claims to the promotion. After bringing his position to the attention of the STFA, the union, like the union in *Humphrey v. Moore, supra,* might have taken measures to afford independent representation of the employee's interests that were adversely affected by the union's position in the grievance. In this manner, the employee's supervisors would have been made more acutely aware of the employee's position in the presentment stages of the proceedings. The STFA must have realized that the processing of its organizational grievance would conclusively settle Saginario's right to the promotion he had received from the Division and thereby effectively exhaust his contractual remedy otherwise available against the Division.

## IV

Although it is a close and difficult question, I would hold that as a matter of the union's duty of fair representation in the administration of the contractual grievance procedure, Saginario should have received notice and an opportunity to be heard at some stage in the presentment of the organizational grievance that determined his right to the promotion. Given its understanding of the importance of the grievance procedure with respect to the contractual interests of Saginario, the STFA, like

the union in *Smith v. Hussmann, supra,* should have taken more "adequate measures to insure a fair resolution of the dispute" by affording the abandoned employee notice and the opportunity for independent representation of his own interests in the proceedings. 619 *F.2d* at 1240. These same considerations of fairness apply in the instant case to support the holding that the STFA's conduct toward Saginario, the unfavored and abandoned employee, was "arbitrary" under the *Vaca* standard. See *id.* at 1237; *Bond v. Local 823, Int'l Bhd. of Teamsters,* 521 *F.2d* 5, 9 (8th Cir. 1975). *Cf.* Summers, *The Individual Employee's Rights Under the Collective Agreement: What Constitutes Fair Representation?* 126 *U.Pa.L.Rev.* 251, 274–75 (1977) ("The union did not act for but against one whom it was obligated to represent, seeking to destroy rather than to protect his contractual rights * * *. [Without the opportunity to make his position known to the employer,] he has clearly been deprived of a procedural right to a fair determination."). Inasmuch as this is a case involving public sector labor relations, we would do well to be mindful of this Court's recent statement that "[p]rotecting public employees from being victimized at the hands of either public employers *or employee organizations* is one of the dominant purposes of the Employer-Employee Relations Act." *Red Bank, supra,* 78 *N.J.* at 132 (emphasis added).

The STFA's conduct was arbitrary and unfair particularly in light of the fact that there was only one abandoned employee to notify and allow to participate in the grievance proceedings. It may well be that the result would be different under the fair representation analysis in a case involving a substantial number of adversely affected employees who seek notice and participation in grievance proceedings initiated on behalf of the majority of the employees in the unit. In that instance, the union's decision to proceed with the grievance to arbitration without notifying all the adversely affected employees or allowing them

to intervene might very well be not only nonarbitrary but entirely reasonable.[3]

I therefore would vacate the arbitration award as procedurally defective and remand the matter for presentment with notice to and participation by Saginario. I would not, however, go as far as the majority in ordering resubmission of the matter to binding arbitration, the fifth stage in the contractual grievance proceedings, with full intervention by the individual employee. Rather, I would limit the employee's access to the proceedings to the early presentment stages, in which he could have participated had it been his grievance. Since neither the statute nor the collective agreement provides the individual employee the right to process his own grievance to binding arbitration, this Court should not formulate a remedy whereby the employer and the majority representative are forced to accept the intervention of an individual employee in his representative's organizational grievance. An appropriate remedy would afford the employee no more extensive rights than suggested by the grievance provisions of the collective agreement—that is, notice of and participation in the presentment stages of the grievance proceedings.

I do not suggest that the evidence presented to the arbitrator necessarily reveals any error or substantive deprivation of the

---

[3]One advantage to the fair representation analysis, in addition to its eminent soundness, is that it lends itself to case-by-case adjudication in this still developing and unsettled area of labor law. This is particularly advantageous given that the fair representation analysis is quite fact-sensitive in its application, an advantage not shared by the majority's construction of the provisions of *N.J.S.A.* 34:13A–5.3. If, as the majority states, an individual employee has a statutorily-vested right to be notified and intervene in the arbitration of an organizational grievance when the union takes a position that directly conflicts with that employee's interests, then that right is inviolate as to any and every similarly situated employee. This would be so regardless of the detrimental effect that large-scale notice and intervention might have on the grievance arbitration procedure in situations involving a substantial number of dissident or disfavored employees. The judicial imposition of such an inflexible statutory requirement may in some situations seriously undermine the entire scheme of voluntary grievance arbitration as an essential means of promoting industrial peace and stability.

employee's right to a promotion pursuant to the terms of the collective agreement, nor any suffering of financial hardship from the action of the STFA or the Division. Rather, I would leave such determinations to the arbitrator, deferring to the grievance arbitration procedure negotiated and invoked by the STFA and the Division as the favored means of resolving the merits of grievances arising over the application or interpretation of the provisions of the collective agreement.

SULLIVAN, J., dissenting.

I would reverse the Appellate Division and reinstate the arbitration award. While not controlling, it is inconceivable to me that respondent was unaware that his promotion to the rank of Sergeant had been challenged by the bargaining representative for all troopers in the Division of State Police. I am satisfied that he knew of the filed grievance and the proceedings thereunder and simply waited to see what the outcome was before asserting that he should have been given notice and an opportunity to be heard. It is to be noted that the Division, in responding to the grievance, sought to uphold the promotion and sustain the basis on which it had been made.

What concerns me most is the effect the majority ruling can have on labor relations in the field of public employment. The exclusive representative for a labor unit often speaks for thousands of employees the interests of whom may vary. Nevertheless, it is the representative's duty to act for the benefit of the members of its unit as a whole, even though the position it takes may work to the disadvantage of some few. As long as it acts in good faith, without favoritism or bias, its statutory right of exclusive representation must be accorded full weight. It could work havoc in grievance proceedings to say that individual members of a labor unit would have a right to intervene in such procedures in a situation where the exclusive representative's position, while beneficial to the unit as a whole, adversely affects a few members of the unit. I fear that this approach can throw the proverbial monkey wrench into the resolution of

labor disputes in the public sector. To that extent I disagree with the "assumption" made in *Red Bank Reg. Educ. Assn. v. Red Bank Reg. High Sch. Bd. of Educ.,* 78 *N.J.* 122, 135 (1978), that individual employees enjoy a concurrent right with their majority representative with respect to the presentation of grievances.

A member of a unit dissatisfied with his representative's position on a particular grievance obviously has the right to take the matter up with such representative. Should the representative violate its duty of fair representation and discriminate against members of its unit, it is answerable to those members in damages and may even be subject to an unfair practice claim under *N.J.S.A.* 34:13A–5.4.

*For affirmance as modified*—Chief Justice WILENTZ and Justices PASHMAN, SCHREIBER, HANDLER and POLLOCK—5.

*For reversal*—Justice SULLIVAN—1.